HERMAN HOLLANDER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5068

October 5, 1966                           418 P.2d 802

*Casey W. Vlautin,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Robert Gaynor Berry,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, D. J.:

Herman Hollander was arrested and charged on two counts, of ex-felon in possession of a firearm, and violation of Nevada's Habitual Criminal Act, NRS 207.010,

for having been convicted of three prior felonies.[1] He was tried before a jury on the first count and found guilty. On the second count he was adjudged guilty and sentenced to life imprisonment. He appeals the conviction alleging five grounds of error: (1) insufficiency of proof of past convictions, both as to the ex-felon charge and that of being an habitual criminal, (2) that he was illegally arrested and therefore the evidence seized at the time of the arrest was wrongfully used against him, (3) refusal of the trial court to grant his request for different counsel than that originally appointed, (4) refusal of the trial court to grant defendant's request for a psychiatric examination, and (5) the granting of the order amending the information charging him with past crimes.

1. Appellant's principal assignment of error is directed to the degree of proof required to establish defendant's identity with prior offenses. Both the primary charge of ex-felon in possession of a firearm and the additional charge that he violated Nevada's Habitual Criminal Act involve proof of earlier convictions.

The foundation offense to the ex-felon charge was supplied by the introduction into evidence of an exemplified copy of a 1954 Nevada conviction.

Our concern, of course, is that an innocent person not be made to suffer for the guilt of another with a similar name. Ordinarily, positive identity is accomplished by the presentation of photographs, fingerprints, and any other available identity data. Circumstances in addition to the copy of the conviction should be considered. Such circumstances include uncommon surnames, identity of

---

[1] NRS 207.010 (2). "Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been three times convicted, whether in this state or elsewhere, of any crime which under the laws of the situs of the crime or of this state would amount to a felony, or who shall previously have been five times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state prison for life."

first names and surnames, as well as the other factors of fingerprints or photographs.

Here, the past conviction together with Hollander's unusual last name, identical first name, and the added weight given a conviction record of the state in which the ex-felon accusation is tried, are considered by us sufficient to justify the jury's conviction.

Referring now to the hearing before the court on the habitual count, the same applications can be made. The State introduced exemplified copies of felony convictions purporting to be those of Hollander. Five past felonies were charged of which two were admitted by him and three denied. The State contends that the record of the three prior convictions alone should be sufficient under our statute to convict the appellant of being an habitual criminal.[2]

Some courts hold that proof of a record merely containing defendant's name is not enough to overcome the presumption of innocence. People v. Casey, 399 Ill. 374, 77 N.E.2d 812, 11 A.L.R.2d 865 (1948). Others are satisfied that the earlier records sufficiently establish identity under the habitual criminal acts, that a properly authenticated conviction presumes identity of person as well as name. State v. Davis, 367 S.W.2d 517 (Mo. 1963); Buie v. Oklahoma, 368 P.2d 663 (Okl.Cr. 1962).

The division of authorities preponderates in favor of allowing the copies to suffice if, as in the primary charge (that of being an ex-felon in possession of a firearm), further circumstances exist pointing to the defendant's identity of person and name. Here the circumstances that existed in the determination of guilt in the first charge were augmented by Hollander's admission to two of the convictions. Sometimes such admissions alone are sufficient to convict. State v. Wyckoff, 27 N.J.Super. 322, 99 A.2d 365 (1953); State v. Jameson, 78 S.D. 282,

---

[2]NRS 207.010(6). "Presentation of an exemplified copy of a felony conviction shall be prima facie evidence of conviction of a prior felony."

100 N.W.2d 829 (1960). We also note 39 Iowa L.Rev. 156 (1953–54). However, we reject that authority which considers the defendant's failure to rebut the presumption created. The responsibility of proof beyond a reasonable doubt remains with the State.

2. The appellant also raises the issue that he was unlawfully arrested. The circumstances of the arrest were that officer Williams had received a phone call on the morning of the arrest, which according to his testimony led him to believe appellant answered the description of a suspect in another crime. The officer later the same morning also received information at Harold's Club that there was a person there with two sets of identification who was acting in a suspicious manner. The officer then left Harold's Club and went to the Nevada Club looking for the subject. When the appellant noticed officer Williams at the Nevada Club, after the officer had spotted him, the appellant started to "shuffle off." The officer stated to the appellant that he wanted to talk to him. This request was later repeated during the time the appellant was attempting to evade the officer. When cornered, the appellant reached inside his coat pocket, whereupon Williams told him, "Hold it, or I'll take your head right off at your shoulders." The officer at that time removed a gun from the appellant's inside coat pocket.

Hollander's contention is that the arrest was not made with probable cause. Considering the information supplied the officer that there was a suspicious looking person in the gaming club with two sets of questionable identification, and the suspicious conduct of the appellant immediately before he was advised to halt, there was sufficient probable cause to justify the arrest and the search. As this court pointed out in Schnepp v. State, 82 Nev. 257, 415 P.2d 619 (1966), "Reasonable cause for arrest has been defined as such a state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that the person is guilty. * * * This includes suspicious conduct of the defendant in the presence of the officers."

See also Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

The concluding movement of the appellant before being confronted by the officer was to put his hand in his inside coat pocket. This final gesture provided the climaxing motivation for his arrest in this case. United States v. Fay, 239 F.Supp. 132 (1965).

. 3. Appellant contends he was denied effective counsel. This assignment of error is based on the refusal of the trial court to discharge the court-appointed attorney and provide new counsel. The objection is primarily grounded on the refusal of the appointed counsel to subpoena certain witnesses desired by the appellant and to otherwise conduct the hearing and trial in accordance with the appellant's wishes.

The expected testimony of the witnesses, the context of which was expressed to the trial judges below, was uniformly held by them to be irrelevant to the charges. We agree. To compel the attendance of the named public officials would have caused needless expense to the state and harassment to those officials without materially or relevantly aiding in the defense.

Appellant, of course, was entitled to "effective" counsel. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Ex parte Kramer, 61 Nev. 174, 122 P.2d 862 (1942). Counsel was "effective" here in pursuing his obligation to see that the appellant's right to a fair trial was not infringed. Under the circumstances, within his sound judgment, he offered or suggested to the appellant every reasonable defense available. An attorney's ability and effectiveness cannot be measured by the number of times he refuses to submit to the legally unsound whims and wishes of his client.

It is always within the sound discretion of the trial court to decide when a controversy arises concerning appointed counsel and the accused whether the matter will prevent a fair trial. State v. Jukich, 49 Nev. 217, 242 P. 590 (1926). There was no showing of incompetency or neglect on the part of appointed counsel in this

352

case. On the contrary, it does not appear that under the circumstances of attempting to obtain the cooperation of a difficult client, that anything was left undone by counsel which would have substantially affected the outcome of the case.

After the refusal by the trial court to substitute counsel, appellant requested that he be allowed to defend himself. He undoubtedly has the right to do so if he so desires under normal conditions. State v. Thomlinson, 78 S.D. 235, 100 N.W.2d 121 (1960), 77 A.L.R.2d 1229. This right has been imposed by the court itself under like circumstances. People v. Shields, 232 Cal.App.2d 716, 43 Cal.Rptr. 188 (1965). In this situation the obligation of the court and prosecution is still to insure the accused a fair trial. Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962). This was adequately provided by the court in this instance. The court required counsel to remain in the courtroom and to be available to the appellant for assistance at all times. Appellant did confer with counsel during the course of the lower court proceedings. Counsel also did provide independent assistance whenever it was called for during the trial.

4. The appellant further raises on this appeal the contention that he was mentally incompetent and should have been granted a psychiatric examination as requested. This, too, is within the discretion of the trial court.[3]

The only evidence offered relating to appellant's competency was his Army record of 1943 reflecting his discharge from the armed forces for psychoneurosis. Nothing else was presented to justify a doubt that he

[3]NRS 178.405. *"Question of sanity to be submitted when doubt arises prior to judgment.* When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if doubt shall arise as to the sanity of the defendant, the court shall order the question to be submitted to a jury that must be drawn and selected as in other cases."

was not able to assist in his defense or that he was incapable of distinguishing right from wrong. There was no abuse of discretion in denying the request.

Appellant's final contention of error is based on the amendment of the habitual criminal charge after the completion of the trial on the substantive offense. Such an amendment is discretionary providing it can be done without prejudice to the substantial rights of the defendant.[4] We find no such prejudicial effect in this case.

5. The trial judge found appellant guilty of the crime of five prior felony convictions listed on the amended information filed January 5, 1966, and punished him for the term of life.

This sentence is a nullity. The very recent case of Lisby v. State, 82 Nev. 183, 414 P.2d 592 (1966), is controlling. In that case our court explicitly held: "It is uniformly held that the purpose of an habitual criminal act is not to charge a *separate* substantive crime but it is only the averment of a fact that may affect the punishment. State v. Bardmess, 54 Nev. 84, 7 P.2d 817 (1932). (Emphasis added.) * * *

"While this court in State v. Bardmess, supra, did not reach the question of the validity of two concurrent sentences, one of which is based on the habitual criminal statute, it did say that '[a] statement of a previous conviction does not charge an offense. It is only the averment of a fact which may affect the punishment.' Thus, there can only be one sentence."

Since the trial court imposed a separate sentence only on the crime of five prior felony convictions, it would appear to make this a substantive offense standing alone, which it is not. The trial court must sentence on the substantive crime charged (ex-felon), and then invoke the recidivist statute to determine the penalty.

---

[4]NRS 173.100(2). "An information may be amended by the district attorney, without leave of court, at any time before the defendant pleads. Such amendment may be made at any time thereafter, in the discretion of the court, where it can be done without prejudice to the substantial rights of the defendant."

As pointed out in Lisby, "Failure to properly sentence does not render the entire trial and proceeding a nullity, and the cases cited immediately above support this Court's authority to modify the trial court's erroneous sentence." It is suggested that a proper sentence in this case would read:

"That Herman Hollander is guilty of the crime of ex-felon in possession of a firearm and that he be punished by imprisonment in the Nevada State Prison for the term of life, as provided for under NRS 207.010 (2), upon a felony conviction followed by proof of the three prior felonies alleged."

Proceedings shall ensue to correct the imposition of sentence. The conviction in all other respects is affirmed.

We direct the lower court to give appellant's court-appointed counsel the certificate specified by NRS 7.260 (3) for compensation of services on this appeal.

Affirmed.

COLLINS, J., concurs.

THOMPSON, J., dissenting:

In a criminal case the burden rests with the state to prove the defendant guilty beyond a reasonable doubt. That principle is deeply imbedded in our history and has, I think, been violated here. Positive proof of identity is readily available to the state. Fingerprinting is routine procedure. Other evidence—less positive, but strong—photographs and testimony of witnesses, is normally within reasonable reach of the state's investigative power. These considerations, when balanced against the real possibility of grave error flowing from the assumption of identity from name alone, compel me to require more of the prosecution. I would hold that there is a failure of proof, not only with respect to the main charge (Gravatt v. United States, 260 F.2d 498 (10th Cir. 1958) ) but with respect to the habitual hearing as well (People v. Casey, 399 Ill. 374, 77 N.E.2d 812 (1948) ; People v. Stewart, 23 Ill.2d 161, 177 N.E.2d 237 (1961) ). This being so, the failure to object, for lack of

foundation, to the exemplified record offered during trial, is of no consequence.

NRS 207.010 (6) concerning habitual criminals, states that "presentation of an exemplified copy of a felony conviction shall be prima facie evidence of conviction of a prior felony." That provision does not touch the issue at hand. Before that statute is operative, proof of identity beyond a reasonable doubt must first be offered. Once that is accomplished, other evidentiary items of the exhibit (type of prior felony, where committed, identity of sentencing court, etc.) may be prima facie evidence of the facts they purport to show. The heavy punishment prescribed for the recidivist demands that care be used in the handling of records to establish identity.

We must always be aware that the rule here announced will govern future cases. Our main concern is with the justice of the rule rather than with the result of the case in which the rule is proclaimed. I fear that the principle announced by my colleagues (identity from name alone may be deemed proof beyond a reasonable doubt) may, before long, result in a grave miscarriage of justice.

I dissent.