[Civ. No. 27804. First Dist., Div. Two. Mar. 24, 1970.]

PAUL LIGDA, as Public Defender, etc., Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
GEORGE WASHINGTON JOHNSON, Real Party in Interest.

## COUNSEL

Paul Ligda, Public Defender, for Petitioner.

Milton Goldinger, County Counsel, and John M. Powers, Assistant County Counsel, for Respondent.

No appearance for Real Party in Interest.

## OPINION

**DAVID, J. pro tem.**\*—The Public Defender of Solano County seeks a writ of prohibition to annul an order that a designated deputy public defender, Stephen R. Camden, attend the trial of defendant, George Washington Johnson, to assist him through sentencing. Camden sought a writ of habeas corpus, contending the court's order illegally deprived him of his freedom.

Johnson was represented initially by the public defender and his deputy, Stephen R. Camden (*People* v. *Johnson,* No. 6303 on respondent's calendar). This representation lasted from October 31, 1969, until January 6, 1970 (the date set for trial), when Johnson successfully urged the court to be allowed to proceed pro. per. in his own defense. The cause came up for trial on January 27, 1970, and just prior to trial, the court made the second order assailed, over the objection of the public defender. The deputy public defender petitioned this court for a writ of habeas corpus, which was denied (1 Crim. No. 8563, this court). The reasons for such denial are embraced in this opinion. While impliedly recognizing the power of the court to assign counsel as an adviser to assist a pro. per. defendant in a criminal case (*People* v. *Mattson* (1959) 51 Cal.2d 777, 789 [336 P.2d 937]; *People* v. *Black* (1962) 205 Cal.App.2d 406 [23 Cal.Rptr. 141]), he

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

asserts that in any such assignment, the consent of a public defender so assigned must be secured; and in making the order without consent of the public defender or his deputy, there is an excess of jurisdiction which can be prohibited. The contention as reflected in the petition for writ of habeas corpus is "The Court's Order that I remain as an adviser during the course of the trial in the matter of Peo v Johnson deprives me of my liberto [*sic*] to attend to my regular duties. That deprivation of liberty is illegal in that the Court has no authority to Order the Public Defender to appear as an 'adviser' to anyone without consent or to order a specific Deputy Public Defender to abandon his other duties to act as 'adviser' without consent." It is broadly claimed that a public defender is no more subject to a court's control than any other attorney practicing before the court.

In *People* v. *Wade* (1968) 266 Cal.App.2d 918, 923, 925 [72 Cal.Rptr. 538]; and *People* v. *Armstrong* (1969) 274 Cal.App.2d 297 [79 Cal. Rptr. 223], it was held that denial of defendant's motion to have a deputy public defender sit as an adviser was not an abuse of judicial discretion. In the *Wade* case, it appears that the deputy objected to accepting such assignment. In *Wade,* the deputy assured the court that defendant (who had three previous felony convictions) was able to make an intelligent waiver of counsel. Defendant had personally and successfully argued his motion under Penal Code section 995. In *Armstrong,* the court held the defendant capable of meeting the simple issues involved in prosecution for a gas station burglary.

■ Even assuming the public defender's consent were held to be necessary, the return to the alternative writ successfully traverses the claim that the assignment of Mr. Camden to assist Mr. Johnson was without his consent. Under the facts, such "consent" was not necessary.

On January 6, 1970, at the time set for trial, defendant Johnson was interrogated by the court relative to his request to relinquish his representation by the public defender's office. Being charged with some 15 counts charging robbery, kidnaping for robbery and attempted murder, the interrogation by the court disclosed serious doubts that Johnson could adequately handle his own defense. The following extracts of the proceedings are pertinent:

"THE COURT [to defendant Johnson]: Well, you mentioned one other thing. You indicated you would like to be in charge of your own defense, but you also made reference to the fact that you, if possible, would like to have some attorney available to provide legal assistance or advice? THE DEFENDANT: Yes. . . . THE COURT: Mr. Camden, what is the position

of the Public Defender's Office in the matter, particularly on this point raised of the request for legal assistance rather than representation or service as counsel for trial? MR. CAMDEN: Well, your Honor, the defendant is right, in that I have had only one consultation with him and I believe that was last Friday. At that time he told me that it was his desire that he would discharge my office in its entirety, the entire legal staff, and he was going to hire his own counsel. In the meantime, we proceeded to appear, however. If Mr. Johnson's motion is granted and he is allowed to proceed pro per, I would at any time he asked me for legal advice, I would be glad to give him the information he requests or any of my legal knowledge that he may need in preparing for his trial."

The defendant advised the court he had no faith in the public defender's office, and Mr. Aye of that office advised the court of Mr. Johnson's lack of cooperation with the public defender's office in preparing for his defense, placing them in an awkward position.

"THE COURT: I am satisfied it would put any counsel in an awkward position. I have already advised Mr. Johnson that the Court does not at this juncture propose to impose upon other counsel by discharging the Public Defender's Office and assigning a private attorney to represent him. However, the motion to relieve the Public Defender's Office as your attorney is granted . . . ."

A speedy trial is enjoined in criminal cases (Pen. Code, §§ 686, subd. 1; 1381-1383).

The district attorney protested vigorously at postponement of the trial; but the court granted a three week's continuance, stating "The strong possibility remains that this, as the record would seem to indicate, may be deemed nothing more than a tactic for delay or prevention of the prosecution for a brief interim. Be that as it may, the Court is obligated to afford every defendant all possible consideration and to acknowledge each of his rights." (Cf. *People* v. *Adamson* (1949) 34 Cal.2d 320 [210 P.2d 13]; *U.S.* v. *Plattner* (2d Cir. 1964) 330 F.2d 271.) There was a further statement, upon fixing the time of trial on January 27, 1970, that no further continuances would be granted; and then the court stated to Mr. Johnson: "The public defender will turn over to you at this time the transcript of the proceedings before the Grand Jury and any and all investigation reports, statements of witnesses or other material pertinent to the defense, in the possession of the public defender.

"Furthermore, if you wish legal assistance you may make a date with Mr. Camden. At this time he has indicated his willingness to provide any continuing counsel if you wish his assistance during trial, to be present, and you may have that.

"THE DEFENDANT: Thank you, your Honor. MR. CAMDEN: Thank you, your Honor. . . . THE COURT: Do you have anything further, Mr. Johnson? THE DEFENDANT: Just that the power to subpoena witnesses be granted. THE COURT: I am sure that Mr. Camden will be willing to process any subpoenas that you wish, and if there are a large number of them the Court may require a showing, or the District Attorney may require a showing in advance of their names and the gist of their testimony, in order that we can be sure that no further delays or waits will be entailed in the case. THE DEFENDANT: All right. Thank you, your Honor."

At this point the option of assigning other counsel from the bar existed if the court found "the public defender has properly refused to represent the person accused." (Pen. Code, § 987a; *Avan* v. *Municipal Court* (1965) 62 Cal.2d 630 [43 Cal.Rptr. 835, 401 P.2d 227].) But Mr. Camden did not refuse the limited assignment made on January 6, and was still with defendant as he appeared on January 27, the time to which the trial was postponed, under an order the case was to proceed in all events. For all the record shows, the public defender's improper refusal was only then made apparent, the refusal proceeding from Mr. Ligda, the county public defender, as Mr. Camden's superior.

It would obviously have been too late to secure private counsel for assignment, a matter we apprehend to be of some difficulty any time in Solano County,[1] which has 81 attorneys, with only 18 in Fairfield, the county seat, and one in Suisun (Records, State Bar). The public defender and his staff constitute some 7 of these, and the district attorney and his staff, and the county counsel must approximately aggregate the same number or more. This accentuates the reasonableness of the orders of the court involved here.

On January 27, 1970, the postponed trial commenced. Mr. Johnson appeared and was accompanied by Mr. Camden, deputy public defender, as adviser. In chambers, Johnson requested that his sister be subpoenaed. "THE COURT: All right, Mr. Camden, this will be a recess assignment for you. MR. CAMDEN: Yes, Your Honor. This is unexpected." The district attorney indicated it would be some five days before the defense would need the witness.

"MR. CAMDEN: I didn't understand this. Now the last time I was here the Defendant made a motion to discharge the Public Defender's Office and that was done. THE COURT: That is true. You are required to stand by to give such assistance as may be required of you, but you are not obliged to manage the case, as it would be if you were attorney. But if he asks

[1]The official population of Solano County is 134,597 (Gov. Code, § 28020) of whom over half reside in the City of Vallejo, over 20 miles away.

you questions about any legal matters during the course of the trial, or if you can assist him in things like this, the Court will expect you to perform. MR. CAMDEN: In other words, my presence will be required during the course of this trial; is that correct, Your Honor? THE COURT: Yes. MR. CAMDEN: I'll have to make a phone call. The Fairfield court will be held completely uncovered and I could be in contempt of court. THE COURT: I'll grant you a writ of habeas corpus if you are held in contempt."

It is apparent that following the court session on January 6, Mr. Paul Ligda, the county public defender, disagreed with the court and made no arrangements for compliance by Mr. Camden.

During the trial on January 29, 1970, the alternative writ herein was issued on the petition of Mr. Ligda, the county public defender, and that fact was communicated to the court, wherein Mr. Camden was in attendance.

■ The court thereupon stated in part to Mr. Camden: ". . . I am the subject of a temporary restraining order forbidding me to compel you to remain in court and also requiring that I appear and answer if I wish to in respect to staying on. Mr. Camden, I know you are subject to the orders of Mr. Ligda. I intend to abide by the orders of a higher court. I nevertheless ask you to remain in the interests of doing all that we can to protect the rights of this Defendant. MR. CAMDEN: Well, Your Honor, I have to obey the orders of my boss. I have a job, I have a wife to support and it would imply my losing my job, although I am concerned with the interests of justice as well. THE COURT: Yes, you have my entire personal sympathy. All right, all right. Mr. Johnson, you are on your own."

Under the circumstances disclosed by the record before us, there was no excess of jurisdiction nor abuse of discretion by the court making the order in question. The court had assigned the cause of Mr. Johnson to the public defender, and Messrs. Aye and Stephen Camden had appeared. for trial, and in the normal course of events would have participated throughout. The defendant obviously needed legal assistance in relation to the serious charges pending against him. He demanded the right to represent himself. The court might have refused to relieve the public defender as his counsel. But while granting the motion to do so, the court undoubtedly was motivated by the willingness of Mr. Camden to continue, in the advisory capacity recognized in such cases by the Supreme. Court.

■ A trial court is not required to appoint advisory counsel when court-appointed counsel is relieved, at the defendant's request (*People* v. *Adame* (1959) 169 Cal.App.2d 587, 601 [337 P.2d 477], cert. den: 361

U.S. 969 [4 L.Ed.2d 548, 80 S.Ct. 599]). But a defendant has been allowed to conduct his defense, after relieving his attorney, but retaining his assigned attorney in an advisory capacity in *People* v. *Pilgrim* (1958) 160 Cal.App.2d 528, 529-530 [325 P.2d 143], a Solano County case.

In *State* v. *Walle* (1968) 182 Neb. 642 [156 N.W.2d 810], the defendant was charged with the murder of his wife. We quote (156 N.W.2d pp. 811-812): "On January 30, 1967, the defendant, in open court, elected to defend himself, and the public defender was appointed as his 'technical adviser.' This was within the discretion of the trial court. *People* v. *Mattson*, 51 Cal.2d 777 [336 P.2d 937]. At this hearing the defendant inquired as to whether he would have access 'to any kind of court rules on courtroom procedure and to any books.' The trial court explained that the public defender would supply advice of a technical nature to the defendant upon his request. The case was then set for trial on February 14, 1967.

"On February 14, 1967, there was a further hearing in the chambers before the trial began. The defendant made an oral motion that he be granted a private cell for purposes of research and study; that he have access to a typewriter, carbon paper, and legal pads; and that he receive a transcript of all testimony for each and every court session by the day. This motion was overruled but the court requested that the sheriff place the defendant in a private cell if one was available. The court also directed the public defender, as technical adviser to the defendant, to supply the other things requested to the best of his ability.

"The defendant argues that an indigent defendant is entitled to collateral aids in addition to trial counsel. He cites cases which hold that an indigent defendant is entitled to the services of an expert witness, such as a hand-writing expert or a psychiatrist.

"We think the trial court adopted the best solution possible for the problems that were presented in this case. The services of the public defender, as a technical adviser, are of much greater value to a defendant untrained in the law than access to a fully equipped law library."

In *Gray* v. *Ellis* (5th Cir. 1958) 257 F.2d 159, 161, defendant asked to be relieved of counsel, in his trial for robbery. "The trial judge specifically stated that he urged on the petitioner that he permit counsel to continue to represent him, but petitioner refused; nevertheless the trial judge required counsel to remain at counsel table throughout the trial." The federal court commended the state court in its attempt to so conform to the basic requirements of due process, and dismissed a petition for habeas corpus brought by the convicted defendant.

Despite a defendant's right to represent himself, the assignment of

counsel who does assist him is no ground for reversal in the absence of actual prejudice. (*United States* v. *Cantor* (2d Cir. 1954) 217 F.2d 536.)

Mr. Justice Burger, concurring in *Brown* v. *United States* (D.C. Cir. 1959) 264 F.2d 363, 369, stated: "I would not agree, without some qualification, that a court cannot assign counsel without consent of the accused. It is axiomatic that more than the rights of an accused are involved in a criminal case. In some circumstances, for an example, where an indictment covers such complex questions of law and fact that the court thinks the accused unable to understand their import, an amicus curiae could properly be appointed without the accused's consent. The accused should, however, still be permitted to present his own case without reference to what is presented by the amicus curiae. Vindication of the processes of justice would require such a procedure in some cases."

We conclude on the record that People v. George Washington Johnson was such a case, where defendant was charged with attempted murder, and numerous counts of robbery, and kidnaping for robbery.

In *Miller* v. *Municipal Court* (1967) 249 Cal.App.2d 531 [57 Cal.Rptr. 578], where a deputy public defender was assigned as an adviser to a defendant, and was cited for contempt for failure to appear at the designated time, the court held (at p. 538) "We are convinced that Judge Twenty-two *used his undoubted power* to adjudicate a contempt, too eagerly." (Italics supplied.)

In *People* v. *Black* (1962) 205 Cal.App.2d 406 [23 Cal.Rptr. 141], the defendant, charged with violation of Penal Code section 288, over the warnings of the danger involved by the court, insisted on representing himself, and upon the discharge of the public defender representing him. The court "reluctantly discharged the public defender but instructed him to remain in the courtroom in an advisory capacity." (P. 408.)

The court stated (at p. 408) "Since the court could not force defendant to accept representation of counsel (*People* v. *Mattson,* 51 Cal. 2d 777 [336 P.2d 937], the court did the most that could be done when it assigned the public defender, who was familiar with the case, to act in an advisory capacity."

In *Hollander* v. *State* (1966) 82 Nev. 345 [418 P.2d 802], defendant appealed his life sentence as an habitual criminal. He claimed prejudicial error, for failure of the court at his instance to discharge his court-appointed attorney and to provide new counsel, as requested, because of counsel's alleged failure to subpoena certain witnesses, and to conduct the trial according to the defendant's desires. The court states (418 P.2d at p. 806): "After the refusal by the trial court to substitute counsel, appellant re-

quested that he be allowed to defend himself. He undoubtedly has the right to do so if he so desires under normal conditions. *State of South Dakota* v. *Thomlinson,* 78 S.D. 235 [100 N.W.2d 121, 77 A.L.R.2d 1229] (1960). This right has been imposed by the court itself under like circumstances. *People* v. *Shields,* 232 Cal.App.2d 716 [43 Cal.Rptr. 188] (1965). In this situation the obligation of the court and prosecution is still to insure the accused a fair trial. *Garner* v. *State,* 78 Nev. 366, 374 P.2d 525 (1962). This was adequately provided by the court in this instance. The court required counsel to remain in the courtroom and to be available to the appellant for assistance at all times. Appellant did confer with counsel during the course of the lower court proceedings. Counsel also did provide independent assistance whenever it was called for during the trial."

In *Hatten* v. *State* (1967) 83 Nev. 531 [435 P.2d 495], appellants were charged with robbery. They asked to be relieved of counsel assigned by the court initially; and then, after assignment of second counsel, asked for his release so they could represent themselves. This, the court permitted as their right under the state Constitution. The Supreme Court stated (435 P.2d at p. 496): "However, the district judge directed Mr. Chachas to remain throughout the trial and to assist the appellants if so permitted by them, which Mr. Chachas did. His representation continued through the hearings on the post-conviction motions.

"We commend the action of the district judge, for while the appellants had a clear right to represent themselves, unless some unusual circumstances appeared, i.e., incompetence, coerced waiver, the assistance of counsel was ever present throughout the trial and during the post-conviction hearings. See *Hollander* v. *State,* 82 Nev. 345, 418 P.2d 802."

■ The fact that the public defender is a public officer, acting by deputy, does not institutionalize the representation. Once a deputy has appeared as counsel in a cause, the court may retain him before the court in such a matter; both as a matter of regulating the procedure before the court, and likewise, to maintain the attorney-client relationship between the defendant and his counsel in the cause itself. ■ Having the right and duty to assign the defense to the public defender, the court has the power to assign him to serve for the more limited included function of advising and assisting one charged with such serious felonies.

In the recent case of *In re Williams* (1969) 1 Cal.3d 168 [81 Cal.Rptr. 784, 460 P.2d 984], the California Supreme Court has said, at pages 174-175: "The Sixth Amendment, which is applicable to the states through the due process clause of the Fourteenth Amendment (*Gideon* v. *Wainright* (1963) 372 U.S. 335, 342 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]) provides that: 'In all criminal prosecutions, the accused shall enjoy

the right . . . to have the Assistance of Counsel for his defense.' (U.S. Const., 6th Amend.) The logical corollary of this right is the right of indigents to have effective counsel appointed by the court at state expense (see *Powell* v. *Alabama* (1932) 287 U.S. 45, 72 [77 L.Ed. 158, 172, 53 S.Ct. 55, 84 A.L.R. 527]; *People* v. *Ibarra, supra,* 60 Cal.2d 460, 464.) California has fulfilled its responsibility to provide counsel for indigents largely by establishing public defender's offices. (See Cuff, *Public Defender System: The Los Angeles Story* (1961) 45 Minn. L.Rev. 715; David, *Institutional or Private Counsel: A Judge's View of the Public Defender System* (1961) 45 Minn.L.Rev. 753.)."

■ Whether the right is rooted in the Sixth Amendment, or in the Fourteenth, it is now established that the "assistance of counsel" is not limited to courtroom advocacy. ■ A suspect before being placed in a lineup for identification purposes is entitled to counsel (*People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]; *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]) and before questioning by officials, in the accusatory stage (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *Escobedo* v. *Illinois* (1964) 378 U.S. 478, 492 [12 L.Ed.2d 977, 87 S.Ct. 1758]; *People* v. *Stewart* (1965) 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97]). ■ He is entitled to consultation with counsel while in jail (*People* v. *Boyden* (1953) 116 Cal.App.2d 278 [253 P.2d 773]; *In re Qualls* (1943) 58 Cal.App.2d 330 [136 P.2d 341]). ■ The right to counsel extends to *coram nobis* proceedings (*People* v. *Shipman* (1965) 62 Cal.2d 226 [42 Cal.Rptr. 1, 397 P.2d 993], and habeas corpus proceedings (*In re Rose* (1965) 62 Cal.2d 384 [42 Cal.Rptr. 236, 398 P.2d 428]).

The right to counsel is also based upon the California constitutional provisions, article I, section 8 (arraignment) and article I, section 13, clause 3, wherein it is stated a defendant shall have the right ". . . to appear and defend, in person and with counsel. . . ." This, it is to be noted, is not in the disjunctive, but it has been construed to be.

Penal Code section 4852.08 imposes the duty upon the public defender of appearing upon proceedings for rehabilitation and pardon. There is a duty to serve as counsel when ordered by a judge in any proceeding to determine if a person is a mentally disordered sex offender (Welf. & Inst. Code, §§ 6314, 6305).

■ Where one is held upon a fugitive warrant, the one held has a right to demand and procure legal counsel (Pen. Code, § 1550.1) and correspondingly, the magistrate has the power to assign counsel, including an appropriate public defender. The public defender is available in *coram*

*nobis* proceedings (*Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 843 [73 Cal.Rptr. 410, 447 P.2d 650]). The foregoing are not necessarily a complete catalog of the public defender's statutory duties.

The petitioner, the Public Defender of Solano County, is not justified in his assumption that Government Code section 27706 and Penal Code section 987a confine his power on the one hand, nor his duty on the other, to give advice and counsel only upon the request of a defendant about any charge against him upon which the public defender is conducting the defense. He is required *to defend* any indigent defendant upon order of the court, at all stages of the proceedings.

The legislative intent in the progressive expansion of the duties of the public defender (Stats. 1947, p. 1175; Stats. 1949, p. 2272; Stats. 1952, First Ex. Sess., p. 388; Stats. 1957, p. 2566; Stats. 1961, p. 3507; Stats. 1965, pp. 1122, 1434; Stats. 1967, p. 1147) seems clear. The purpose is, to keep pace with the progressive requirements of due process of law, declared in the decisions of our Supreme Courts, in providing counsel for indigent defendants. The word "defense" is clearly to be interpreted as embracing "the assistance of counsel for his defense" as specified in the Sixth Amendment. That assistance clearly embraces more than control of the case in formal proceedings. To assist in summoning witnesses, as the trial court indicated Mr. Camden should do under the assignment made, was entirely germane to the defense (Pen. Code, § 686; Cal. Const., art. I, § 13; Pen. Code, § 1326, subd. 3).

As was declared in *White* v. *Towers* (1951) 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636], " 'Duties of public office include those lying squarely within its scope, those essential to accomplishment of the main purposes for which the office was created, and those which, although only incidental and collateral, serve to promote the accomplishment of the principal purposes' (*Nesbitt Fruit Products* v. *Wallace,* 17 F. Supp. 141, 143)."

To defend a person on trial before a court, is, in our opinion, not equivalent to the provision to conduct the defense of such a person. While the first is necessarily included in the latter, the defense of a person may, as here, embrace much more (cf. *State* v. *Hudson* (1935) 55 R.I. 141 [179 A. 130, 100 A.L.R. 313, 317]; *Ingram* v. *Justice Court, supra,* 69 Cal.2d 832, 843).

If statutory authority is required beyond the inherent powers of the court, we turn to Code of Civil Procedure, section 128: "Every court shall have power: . . . 5. To control, in the furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected

with a judicial proceeding before it, in every matter appertaining thereto. . . ."

It is true a public defender is not per se a court attaché. (Gov. Code, § 27703.) Yet, a public defender is such a "ministerial officer," and an attorney is a "person specially vested with ministerial powers in relation to the courts of justice" (Code Civ. Proc., part I, tables IV and V headings and contents); and in either capacity was clearly embraced as one of "all other persons in any manner connected with a judicial proceeding" before the court (Code Civ. Proc., § 128).

We refer also to Code of Civil Procedure section 187: "When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or any statute, any suitable process or mode of proceeding may be adopted which may appear most comfortable to the spirit of this code."

The assignment of counsel to assist the defendant, conducting his own defense, was thus both an appropriate and authorized procedure, in the circumstances of this case. The deputy public defender who had been ordered to assist in conduct of the case was a person connected with a judicial proceeding before the court. Upon relieving him as counsel in a pending case, the court had the power to require him, both as an officer of the court as an attorney, and in his official capacity, to continue to "assist" the defendant, pursuant to the constitutional mandate. As an attorney, his consent to such a role had been manifested. As public defenders, neither Mr. Camden nor his superior, Mr. Ligda, had power to defy the valid order of the court. As between the public defender and his deputy, there can be validly no prejudice nor disciplinary reprisals for the role of Mr. Camden, caught in the middle in this controversy; nor will we presume its existence, hinted in the record.

While in particular instances the defendant has been represented in court at different stages of a prosecution by different attorneys from a public defender's office, the record revealing no prejudice to defendant (*People v. Fuller* (1961) 188 Cal.App.2d 466 [10 Cal.Rptr. 420]; *People v. Martinez* (1956) 145 Cal.App.2d 361 [302 P.2d 643]), it does not follow that a trial judge may not direct that one familiar with the cause continue with it in an advisory capacity to prevent the possibility of prejudice to the rights of a defendant (cf. *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 562 [68 Cal.Rptr. 1, 440 P.2d 65], note, discussing *People* v. *Stroble* (1951) 36 Cal.2d 615 [226 P.2d 330]).

Before any assignments are made by the court to the public defender, it is clear he has the management and control of his deputies. While in large courts it has been an established practice for both the district attorney and the public defender to assign their deputies for service in a particular department or division, that may not be enforced by a court in advance of specific case assignments therein (*Mowrer* v. *Superior Court* (1969) 3 Cal.App.3d 223 [83 Cal.Rptr. 125]).

As the case last cited indicates, courts must cooperate in coordinating calendar demands. In the instant case, the public defender's representatives came in for this trial. The conflict only arose by the public defender's failure to honor the court's order, by not covering Mr. Camden in the calendar of the Fairfield-Suisun Municipal Court on the trial date.

In representing his client, and particularly in respect to their attorney-client relationship, it has aptly been held that the public defender has all the powers and privileges for his client that would exist in respect to any private employment of counsel (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 562 [68 Cal.Rptr. 1, 440 P.2d 65]; *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 841 [73 Cal.Rptr. 410, 447 P.2d 650]).

But the public defender as a ministerial officer of the court does not have the power to decline an assignment to defend or any function thereof, as if he were a private attorney. He is employed by the people to render such services.

Tremendous burdens are imposed on the courts, district attorneys and public defenders by the criminal jurisprudence of the day. Throughout the state, it is common knowledge that the defense of the greater portion of all criminal offenses falls upon the public defender. In 1967-68, there were 296 criminal filings in the Superior Court of Solano County, with 153 disposed of before trial, and 60 after contested criminal trials. Juries were sworn in 53 of these trials. There were 160 habeas corpus proceedings, with 25 disposed of after a contested hearing. There were 47 criminal cases awaiting trial in the superior court on June 30, 1968. Two municipal court districts are served, Fairfield-Suisun and Vallejo. In 1967-68, there were 36 felony uncontested preliminary hearings in the former, and 127 in the Vallejo court; with 16 contested in that municipal court. Those courts disposed of 91 nontraffic misdemeanors in such period.[2] In addition, there are active justice courts in Benicia, Dixon, Rio Vista and Vacaville.

When a public defender reels under a staggering workload, he need not animate the competitive instinct of a trial judge by resistance to

---

[2]Data is as shown in the 1969 Report of the Judicial Council of California, Annual Report of the Administrative Office of the California Courts, covering the period July 1, 1967 through June 30, 1968.

or defiance of his assignment orders to the public defender. (The judge in this case acted with full dignity and restraint.) The public defender should proceed to place the situation before the judge, who upon a satisfactory showing can relieve him, and order the employment of private counsel (Pen. Code, § 987a) at·public expense. Such relief, of necessity, involves the constitutional injunction to afford a speedy trial to a. defendant. Boards of supervisors face the choice of either funding the costs of assignment of private counsel and often, increasing the costs of feeding, housing and controlling a prisoner during postponement of trials; or of making provision of funds, facilities and personnel for a public defender's office adequate for the demands placed upon it.

The public defender asserts he is a county officer, under control of the board of supervisors, not the court. The former could not diminish his established official duties nor have they; and the latter premise to the extent we have indicated is nonentitative.

The alternative writ of prohibition is discharged, and the peremptory writ is denied. The petition for habeas corpus in 1 Crim. No. 8563 already has been denied.

Shoemaker, P. J., and Taylor, J., concurred.