[No. E024120. Fourth Dist., Div. Two. Nov. 16, 1999.]

DAVID DURDINES, as Deputy Public Defender, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

David L. McKenna, Public Defender, David W. Negus, Chief Deputy Public Defender, and Herbert E. Williamson III, Deputy Public Defender, for Petitioner.

Bill Lockyer, Attorney General, and Holly D. Wilkens, Deputy Attorney General, as Amicis Curiae on behalf of Petitioner.

No appearance for Respondent.

Dennis L. Stout, District Attorney, Grover D. Merritt and Mary L. Andonov, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**McKINSTER, Acting P. J.**—When a defendant seeks to invalidate his conviction by claiming that his trial attorney failed to preserve an allegedly crucial objection, does the superior court have the power to order the trial attorney to explain his action or inaction, either in person or by declaration, before the issuance of the writ of habeas corpus? No. Accordingly, we grant the petition.

Defendant William Craig Davis was convicted of first degree murder in 1995. On October 30, 1998, he filed a petition for writ of habeas corpus based on the allegedly ineffective assistance rendered by trial counsel David Durdines. Specifically, defendant asserted that Durdines failed to preserve a potentially successful *Miranda*[1] claim by failing to make appropriate objections and/or motions in the trial court.[2]

Without issuing the writ of habeas corpus, the trial court instead issued an order directing Durdines to file a declaration setting forth his position on the issues raised by the petition. Durdines refused to do so, and when he appeared in court to explain his refusal the court again ordered him to prepare a declaration. Durdines filed a petition for writ of prohibition with this court, which we summarily denied. However, the Supreme Court granted petitioner's petition for review, and transferred the case back to this

---

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[2]On defendant's direct appeal, this court considered and rejected defendant's claim that his confession was involuntary due to his exhaustion and use of methamphetamine. We briefly commented that defendant's other challenges to the constitutionality of the confession had not been raised below. (*People* v. *Davis* (Jan. 13, 1998) No. E017408 [nonpub. opn.].)

court with directions to issue an order to show cause. We have, of course, complied with that directive.

In our original review of the petition, which was conducted under the usual time constraints applicable to writ petitions, we understood generally that petitioner was challenging the trial court's authority to require him to provide testimony, orally or in writing, on the issues.[3] Based on the obvious utility of the procedure employed by the superior court, our view of Durdines's duty and obligation as attorney for his client and as an officer of the court, and a perceived need for speedy action, we issued a summary denial of the petition. Having reconsidered the petition, the petition for review, and the reply to real party in interest's answer, we do ascertain a distinct issue of procedure presented for our resolution. On further reflection, we conclude that the trial court erred. However, we do so reluctantly.

## DISCUSSION

Petitioner states that the trial court cited *In re Gray* (1981) 123 Cal.App.3d 614, 616 [176 Cal.Rptr. 721] and California Rules of Court, rule 60[4] in support of its order that Durdines prepare and file an explanatory declaration. Rule 60 provides that the court, "before passing on the petition," may order up any portion of the record (or a certified copy thereof) or may request an informal response from the People.

To begin with, we note that rule 60 applies to the "reviewing court" and although the People argue that the superior court *is* a reviewing court when it considers a petition for habeas corpus, we cannot agree that rule 60 is intended to apply to the superior court. It falls in division I (Rules Relating to the Supreme Court and Courts of Appeal) of Title One (Appellate Rules), and is found in Chapter II of that division, entitled "Rules on Original Proceedings in Reviewing Courts." Making it perfectly clear that the rule does not apply to superior courts, the Judicial Council has also adopted rule 260, which just as expressly provides for habeas corpus procedures to be followed by the *superior court,* and is found in division I (Rules for the Superior Court) of title two (Pretrial and Trial Rules).[5]

Under rule 260, the superior court in which a petition for writ of habeas corpus is pending has limited flexibility. Most significantly, in

[3]Petitioner later clarified that he did not contest the power of the court to require his attendance and testimony as a witness at a hearing held pursuant to the writ of habeas corpus or an order to show cause.

[4]All subsequent rule references are to the California Rules of Court.

[5]Jurisdiction to issue the writ of habeas corpus lies in the superior courts, Courts of Appeal, and Supreme Court. However, because habeas corpus is a collateral attack, a court consider-

contrast to rule 60, rule 260 does not provide for requesting an informal response. Instead, rule 260 merely provides that if the court communicates ex parte with any person other than the petitioner, it *must* either grant the relief requested or set the matter for hearing, unless the case has become moot. In other respects, rule 260 is consistent with the statutory scheme (Pen. Code, § 1473 et seq.), as explained in *People* v. *Romero* (1994) 8 Cal.4th 728 [35 Cal.Rptr.2d 270, 883 P.2d 388] and *People* v. *Duvall* (1995) 9 Cal.4th 464 [37 Cal.Rptr.2d 259, 886 P.2d 1252]. If a petition appears to have merit—that if, if it states a prima facie claim for relief (*Duvall, supra,* at pp. 474-475)—the superior court must issue either the writ or an order to show cause.[6]

Thus, it is apparent that the Judicial Council has withheld from the superior court a useful, almost an essential tool: the informal response. A fortiori, the superior court has no power to collect evidence or information on its own behalf through judicial compulsion.

It might be argued that the court possesses such a power inherently. Code of Civil Procedure section 187 states that "[w]hen jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." However, as the Supreme Court has recently stressed (*People* v. *Romero, supra* 8 Cal.4th 728; *People* v. *Duvall, supra,* 9 Cal.4th 464), Penal Code section 1473 et seq. *does* specifically point out the required course of proceeding, and even if the courts retain some flexibility, we cannot find that superior courts are empowered to employ a procedure approved in concept *only* for the appellate courts and *omitted* from the rules governing superior courts.

Hence, we reach the conclusion that the superior court erred in attempting to compel a declaration from Attorney Durdines without first issuing the writ of habeas corpus.

---

ing such a petition is not genuinely "reviewing" an earlier judgment. Thus, a petition for writ of habeas corpus is classified as an "original proceeding" no matter what court it is filed in.

We also note at this point that the denial of a petition for habeas corpus is not an appealable order (see *In re Hochberg* (1970) 2 Cal.3d 870, 876 [87 Cal.Rptr. 681, 471 P.2d 1]); the disappointed petitioner simply files a new petition with the next highest court.

[6]The writ of habeas corpus does not entitle a petitioner to his release. Its function is merely procedural, as it triggers adversarial proceedings and requires the respondent to file a return. (Pen. Code, §§ 1477, 1480; *People* v. *Romero, supra,* 8 Cal.4th at p. 738.) If it is not desirable to "have the body" of the prisoner produced in court, an order to show cause may issue to the respondent instead. (*People* v. *Romero, supra,* 8 Cal.4th at p. 738.) The procedural effect is the same.

The other arguments of the People fail to persuade us otherwise.[7] As we have explained, rule 60 cannot be construed to expand the powers of the *superior* court. Accordingly, even if, as the People assert, other Courts of Appeal employ the exact procedure attempted by the superior court here,[8] this does not validate the superior court's action. Next, although we agree that the language of Penal Code section 1484 confers broad powers on the court hearing a petition for habeas corpus, including the power "to require and compel the attendance of witnesses," this provision refers to the hearing held *after* the writ of habeas corpus has issued and a return has been filed. It does not authorize the court to conduct its own investigation, under compulsion, upon the filing of the petition. As the Attorney General points out, in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1258 [275 Cal.Rptr. 729, 800 P.2d 1159] the court noted that until the writ or order to show cause issues, there is no "cause" pending before the court which confers jurisdiction on the court to authorize discovery. By analogy, there is no power in the court itself to exact information from a reluctant witness.

The People's most potent arguments are those which led this court initially to summarily deny the petition. Although we have determined that considerations of practicality cannot prevail to create a power which the Legislature and the Judicial Council have withheld, we feel constrained to set forth what we consider to be cogent arguments in favor of such a power.

■ In *People v. Romero, supra,* 8 Cal.4th at page 737, the court stressed the importance of the court's duty to make an initial determination as to whether the petition states a prima facie case for relief. If it does, the court is "obligated" to issue the writ of habeas corpus. This in turn requires the respondent to file a formal return, which must comply with specified procedural requirements. (*People v. Duvall, supra,* 9 Cal.4th at pp. 476-481.)

At the same time, the court in *Duvall* conceded that the number of habeas corpus petitions "has grown dramatically in recent times." (9 Cal.4th at p. 474.) Although the duty to conduct formal proceedings arises only if a petition states a prima facie basis for relief,[9] unfortunately it is not difficult for the artful petitioner to do so. As even the Supreme Court noted in

---

[7]Neither respondent court nor defendant Davis has submitted briefing to this court. We have, however, received a brief from the Attorney General as amicus curiae on the side of the petitioner.

[8]The People assert that the Fifth District has a practice of inviting the attorney whose actions are challenged to submit a declaration explaining his position. Assuming this to be the case, we note that the term used is "invite," not "compel."

[9]It may be questioned how strict this rule is, at least in application. We note that in *In re Alvernaz* (1992) 2 Cal.4th 924, 945 [8 Cal.Rptr.2d 713, 830 P.2d 747], the court eventually denied the petition because it found petitioner's declarations not credible and not corroborated

*Romero*, quoting the concurring opinion of Justice Friedman in *Frias* v. *Superior Court* (1975) 51 Cal.App.3d 919, 924 [124 Cal.Rptr. 616], " '[s]ome kind of screening capability is essential to the sensible fulfillment of habeas corpus responsibility.' " (8 Cal.4th at p. 742.) For appellate courts, rule 60 provides a mechanism for screening by allowing the court to seek an informal response from the People before issuing an order to show cause.[10] It does, in fact, serve *two* purposes, opposite but similar. Most petitions filed by inmates in propria persona are inadequately supported by portions of the written record and contain no corroboration of crucial assertions. In some cases, especially involving unrepresented defendants or inmates, a petition may be facially inadequate yet suggest the existence of facts which might support the relief requested, however imperfectly. In such a case, the court may use the informal response procedure to encourage the People to look into whether or not factual assertions by the petitioner are accurate; it even happens that the People, having investigated the matter, will inform the court that the petitioner is entitled to relief. In these cases the court tacitly employs the informal response procedure in aid of a petitioner whose lack of legal training or simple articulateness prevents him from presenting what might be a good case.

More typically, of course, the People's informal response serves to fatally undermine the petition by providing the court with irrefutable evidence that the petition's allegations are factually unfounded. In such a case, the appellate court can speedily terminate proceedings, after the minimum expenditure of time and expense.

As we have seen, superior courts do not even have the power to solicit an informal response as provided by rule 60, while rule 260 actually discourages the superior court from attempting informally to probe the allegations of a petition. If a petition appears to set out a prima facie case, the court is obligated under *Duvall* to issue the writ of habeas corpus and seek a formal return from the People. To avoid this, a heavily burdened court may simply refuse to credit uncorroborated or suspect allegations (see *In re Alvernaz*,

on an essential point. Although in *Alvernaz* the Court of Appeal had issued an order to show cause, if a court may deny a petition based on its evaluation of the credibility of written declarations after issuing an order to show cause, logically there is no reason why it could not apply that evaluation in deciding whether to issue the order in the first place.

[10]The need for an efficient screening method is perhaps most important for appellate courts, which, if a case appears to have merit, must follow up the writ or order to show cause with oral argument and a formal written opinion. (Cal. Const., art. VI, § 14.) Although in *Romero* the court remarked rather blandly that the process need not be "slow or cumbersome" (8 Cal.4th at p. 744), the fact is that it does require substantial time and effort on the part of the court and its clerical staff, not to mention the written and oral presentations by the parties. On the other hand, a meritless petition may be denied *before* the issuance of an order to show cause by a summary order.

*supra*, 2 Cal.4th 924), whether or not this is consistent with *Duvall*. If it conscientiously respects the prima facie case, the People are put to the task of preparing a detailed and formal return complying with the requirements of *Duvall* even though conclusively rebutting information could have been more conveniently conveyed to the court by an informal letter brief.[11]

█ As a practical matter, no good reason appears to us why an informal response procedure should not be available to superior courts. However, it is also worth noting that superior courts are subject to time constraints which essentially moot the entire issue. Rule 260 gives the superior court only 30 days in which to decide whether to issue the writ of habeas corpus or deny the petition. Patently, as a general rule it is simply impracticable for the superior court to solicit and receive an *informal* response, followed in many cases by an informal reply,[12] and then decide what to do—all within 30 days of receipt of the petition. This circumstance reinforces our conclusion that the use of an informal response procedure by superior courts has not been contemplated by the Judicial Council or the Supreme Court.

We have concluded that rule 260 denies the ability to proceed informally to the superior courts, and we also concede that even the appellate courts are not expressly authorized to compel trial counsel to provide information without issuing a writ of habeas corpus or order to show cause. However, although Attorney Durdines raises several additional objections, none conclusively demonstrate that the practice is, or would be, undesirable at any judicial level.

For example, Durdines then argues that he is being compelled to do the work of the district attorney. Nonsense. The superior court does not know whether Durdines's explanation would support or discredit defendant Davis.[13] Durdines is not being asked to refute Davis's version, but simply to provide information which would assist the court in determining whether or not Davis's position is viable.

---

[11]It might be argued that it is not significantly more difficult or time-consuming to prepare a return than an informal letter brief. We note that a prosecutor who has studied *Duvall* may feel required to expend no little time ensuring that the return adequately denies each and every material allegation of the petition and adequately states specific facts supporting the denials. In *Duvall*, the Court of Appeal essentially "defaulted" the People due to the insufficiency of the return, and although the Supreme Court reversed, it did not disapprove in concept of the potentially drastic result of a technically inadequate return.

It can also be questioned why the People should be required to put forth *any* additional amount of time and effort in responding to a petition filed in the superior court than to one in the Court of Appeal.

[12]If the informal response on its face seemed to demonstrate that the petition was meritless, the superior court would nevertheless be required to give the habeas corpus petitioner an opportunity to reply, as required by rule 60.

[13]Presumably Durdines *does* know, of course.

Durdines then argues that he is being forced to be a party to the proceeding because he is asked to set forth his position. This point is mere semantic quibbling. Of course a nonparty is not expected to take a position in the litigation, and arguably the superior court's order could have been more carefully worded. However, the gist is obviously that the court was asking Durdines to set forth his reasons for the decisions challenged by defendant. The court was not attempting to make Durdines a party.

Finally, Durdines contends that to prepare a declaration as ordered by the superior court would breach his ethical duty to his client. ■ If he is referring to the attorney-client privilege, it has been waived by Davis. (Evid. Code, § 958; *In re Gray, supra,* 123 Cal.App.3d at p. 616; see also *Smith, Smith & Kring* v. *Superior Court* (1997) 60 Cal.App.4th 573, 580 [70 Cal.Rptr.2d 507], holding that a plaintiff suing her former attorneys for malpractice had necessarily waived any claim of confidentiality as to communications relevant to her claim.) It is only fair, in fact, that a "trial attorney whose competence is assailed by his former client must be able to adequately defend his professional reputation, even if by doing so he relates confidences revealed to him by the client." (*People* v. *Pope* (1979) 23 Cal.3d 412, 440 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1] (dis. opn. of Mosk, J.).)[14]

■ Although Durdines raises the points above, which would suggest his implacable opposition to the prospect of ever being compelled to provide information, he concedes that if a writ of habeas corpus issues and a hearing is ordered, he *could* be required to appear as a witness. We agree. (See Pen. Code, § 1484, cited *ante.*) At oral argument, petitioner suggested that it was unfair or too onerous to expect him to analyze and determine the significant issues raised by a habeas corpus petition in order to respond to the petition in declaration form. While this might be true in some cases, as a general proposition it is unsupportable. Defense counsel are, after all, trained to analyze legal briefs and arguments, and there is no reason why explicit assertions of incompetent representation should be particularly difficult to understand and answer. Insofar as petitioner argued that it is simply more efficient for counsel to respond in testimonial fashion, answering specific questions, we need not agree or disagree; the issue simply does not go to the *power* of the court to choose one avenue or the other.

Although we have reluctantly concluded that the superior court could not, in fact, compel Durdines to provide an explanatory declaration, what harm is

---

[14]Durdines may be willing to sacrifice his professional interests in aid of his former client if he is eventually called upon again by the court (see *post*). However, insofar as there is no privilege not to respond, he would risk a finding of contempt if he refused to answer or otherwise cooperate.

Durdines attempting to avoid by refusing to do so? If he can be required to explain his action or inaction when subpoenaed, why is it so important to resist at this stage? An attorney is, after all, an officer of the court. He is generally subject to the court's control as a "person . . . connected with a judicial proceeding before [the court]." (Code Civ. Proc., § 128, subd. (a)(5); and see *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811, 825, 826 [85 Cal.Rptr. 744] [citing this section and Code of Civil Procedure section 187 in the context of the court's power to order a public defender to assist a defendant acting in propria persona].) By standing on procedural technicalities to support his refusal to respond at this point, petitioner merely delays the inevitable, to no visible point except delay.

Nevertheless, the court exceeded its power in requiring Durdines to prepare a declaration at this stage. Accordingly, he is entitled to relief.

Let a peremptory writ of prohibition issue, directing the Superior Court of San Bernardino County to take no further action to enforce its order directed to petitioner David Durdines. Petitioner is directed to prepare and have the peremptory writ of prohibition issued, copies served and the original filed with the clerk of this court, together with proof of service on all parties.

Richli, J., and Gaut, J., concurred.