[No. A081708. First Dist., Div. Five. June 22, 1998.]

MARVIN BROOKNER, as Public Defender, etc., Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

## Counsel

Marvin Brookner, Public Defender, and Dawn Polvorosa, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

No appearance for Real Parties in Interest.

## Opinion

**PETERSON, P. J.**—Petitioner Marvin Brookner, as Solano County Public Defender, represented real party Bruce Alan Robinson until Robinson successfully moved to represent himself under *Faretta* v. *California* (1975) 422

U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (*Faretta*). After granting the *Faretta* motion, and over petitioner's objection, respondent superior court appointed petitioner advisory and standby counsel to his former client. Petitioner moved to be relieved of the advisory/standby counsel appointment. The superior court denied the motion. Petitioner seeks writ review of the denial, arguing, inter alia, that by statute a public defender cannot be appointed advisory or standby counsel. We stayed proceedings and solicited opposition from Robinson and the People, neither of whom chose to file opposition. We deny the petition.

## I. PROCEDURAL BACKGROUND AND FACTS

By information filed in October 1996, Robinson is charged with one count of second degree robbery and nine priors. He is being prosecuted under the career criminals statutes (Pen. Code, § 999b et seq.), as well as the three strikes law. According to the petition, he faces 43 years to life in prison.

Mr. Robinson has had four public defenders assigned to his case, and has not been happy with the services of any of them. He filed a motion for new counsel under *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] against his current attorney, Deputy Public Defender Dawn Polvorosa. That motion was denied.[1] On January 16, 1998, the superior court granted Robinson's motion for self-representation. At the hearing on that motion, the court appointed the public defender as advisory and standby counsel. The court announced that Ms. Polvorosa "will be in the case up to the end. If you [Robinson] should ever change your mind, which is what usually happens 90 percent of the time, you're not going to get a continuance. She is going to step in at that point." Polvorosa "will be ready and immediately available."

Ms. Polvorosa objected to being appointed advisory and standby counsel. The court noted her objection but declined to set aside the appointment.

On January 21, 1998, petitioner Brookner filed a motion to be relieved from the appointment, relying on the Second Appellate District decision in *Littlefield* v. *Superior Court* (1993) 18 Cal.App.4th 856 [22 Cal.Rptr.2d 659] (*Littlefield*). That decision interpreted the statutory authorization of the public defender, Government Code section 27706 (section 27706), to preclude the appointment of a public defender as advisory or standby counsel. There is no indication that either the People or Robinson filed an opposition to petitioner's motion. The superior court denied the motion on the basis of

---

[1]Robinson told the court he had "a conflict with this woman." The court replied, "Mr. Robinson, I suspect you are going to have a conflict with anybody."

a First Appellate District case, *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811 [85 Cal.Rptr. 744] (*Ligda*), which conflicted with *Littlefield* but which the court found was "a far better reasoned decision."

Petitioner seeks writ review, urging us to agree with *Littlefield* and find *Ligda* not controlling.

## II. DISCUSSION

### A. The Concepts of "Advisory" and "Standby" Counsel

Before we discuss the merits of the issue raised by the petition, we pause briefly to question the prevailing notion that appointment of "advisory" or "standby" counsel should be considered when the defendant has chosen self-representation. Such appointments were endorsed by the United States Supreme Court in one of the many footnotes of the *Faretta* opinion, but only in the context of providing a procedural backup when the obstreperous propria persona becomes disruptive. (422 U.S. at p. 834, fn. 46 [95 S.Ct. at p. 2541].)[2] The notion has been adopted by our Supreme Court. "The [trial] court *may*, and in a proper case should, appoint counsel to assist in an 'advisory' capacity . . . or to serve in a 'standby' role, 'available to represent the accused in the event that termination of the defendant's self-representation is necessary.'" (*People* v. *Hamilton* (1989) 48 Cal.3d 1142, 1164, fn. 14 [259 Cal.Rptr. 701, 774 P.2d 730] (*Hamilton*), quoting *Faretta*, *supra*, 422 U.S. at p. 834, fn. 46 [95 S.Ct. at p. 2541], italics in original.) Indeed, our Supreme Court has held that it is reversible per se for a trial court to refuse to consider the appointment of advisory counsel. (*People* v. *Bigelow* (1984) 37 Cal.3d 731, 742-746 [209 Cal.Rptr. 328, 691 P.2d 994, 64 A.L.R.4th 723].) However, an advisory or standby counsel is not "constitutionally guaranteed" to a criminal defendant. (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1218 [259 Cal.Rptr. 669, 774 P.2d 698] (*Bloom*).)

[2]Footnote 46 of *Faretta*, in its entirety, reads as follows: "We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. [Citation.] *Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.* [Citation.] [¶] *The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'*" (422 U.S. at p. 834 [95 S.Ct. at p. 2541], italics added.)

It seems to us that a defendant either has an attorney or he is his own attorney—period. There should be no middle ground. A defendant who represents himself does so voluntarily, knowingly, and intelligently; and only after being duly warned of the consequences of his decision. (*Faretta, supra,* 422 U.S. at pp. 835-836 [95 S.Ct. at pp. 2541-2542]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1363-1364 [65 Cal.Rptr.2d 145, 939 P.2d 259] (*Bradford*).) He is routinely told that no special treatment will be provided simply because he has competently elected to represent himself although he is not an attorney—but in the same breath the court may, and is told by higher courts that it should, provide just such a special treatment by appointing an advisory or standby counsel to assist the defendant.

Our Supreme Court has said that "in all cases of shared or divided representation, either the accused or the attorney must be in charge. Stated otherwise, at all times the record should be clear that the accused is either self-represented or represented by counsel; the accused cannot be both at once." (*Bloom, supra,* 48 Cal.3d at p. 1219; see *Bradford, supra,* 15 Cal.4th at p. 1368.) It seems only the next logical step to discard the hybrid forms of advisory and standby counsel.

Such hybrid appointments should not be justified by the fear of the obstreperous or disruptive propria persona defendant. The court can control proceedings with the contempt power. Likewise, the fact that a self-representing defendant may change his mind does not require a "backup" appointment. A defendant who suddenly eschews self-representation may find that he will not be relieved of his original choice. ■ A trial judge is not obligated to restore counsel if a *Faretta* defendant changes his mind in midtrial and no longer wants to represent himself. A request for restoration of the services of counsel is left to the sound discretion of the trial court, exercised in light of several factors, including: " '(1) defendant's prior history in the substitution of counsel and the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.' " (*People v. Gallego* (1990) 52 Cal.3d 115, 164 [276 Cal.Rptr. 679, 802 P.2d 169], quoting with approval *People v. Elliott* (1977) 70 Cal.App.3d 984, 993-994 [139 Cal.Rptr. 205].)

Hybrid modes of representation pose particularly serious dilemmas for the appointed attorney. The terms "advisory counsel" and "standby counsel" are seldom defined with any sort of analytical precision. (See, e.g., *Hamilton,*

*supra*, 48 Cal.3d at p. 1164, fn. 14 ["The cases have loosely used such terms as . . . 'advisory counsel,' 'standby counsel,' and 'hybrid representation' to describe a multitude of situations in which both the accused and professional counsel are involved in the presentation of the defense case."]) Yet an advisory or standby counsel is subject to "claims of 'ineffective assistance' which arise directly from *assisting counsel's* breach of the *limited* authority and responsibilities counsel has assumed. [Citation.]" (*Ibid.*, italics in original.)

Advisory or standby counsel must often, and necessarily, remain confused and indecisive as to their roles and responsibilities, in contrast to counsel appointed to defend the case whose duties are well-defined and for whom a standard of ineffectiveness is well-known. (See, e.g., *People v. Lewis* (1990) 50 Cal.3d 262, 288 [266 Cal.Rptr. 834, 786 P.2d 892]; *Strickland v. Washington* (1984) 466 U.S. 668, 687-696 [104 S.Ct. 2052, 2064-2069, 80 L.Ed.2d 674].) Is the standard of responsibility and effective assistance, for example, different for an "advisory" counsel as opposed to a "standby" counsel? What is the standard of responsibility for a lawyer who receives both such designations in a single appointment? Does such counsel have the responsibility to remain silent unless specifically consulted by the defendant, giving that defendant free reign to plod ahead while courting disaster? If counsel seeks to countermand tactical choices the *Faretta* defendant is making, has he exceeded his "*limited* authority and responsibilities"? (*Hamilton, supra*, 48 Cal.3d at p. 1164, fn. 14, italics in original.)

Such advisory and standby appointments are pragmatically bottomed on a rationale usually unstated: reduction thereby of the likelihood of reversals in *Faretta* cases on Sixth Amendment grounds. That unspoken rationale, while good for the courts, ignores the ominous tradeoffs imposed on counsel, who receive such appointments and thereafter must provide those appointed services to defendants who frequently do not seek or want them. In this case, the problem is more egregious. The public defender, appointed both as advisory and standby counsel, was theretofore rejected by the defendant who obtained *Faretta* status (he claimed "a conflict with this woman"). Counsel receiving these hybrid appointments, particularly when the rejection of their services is the predicate condition for defendants' self-representation, obviously risk claims of malpractice by those defendants who have clearly voiced animosity toward them. Such counsels' risks of exposure to malpractice claims are magnified to an unusual degree because the role and duties of advisory and/or standby counsel are not clearly established or defined. The unsuccessful *Faretta* defendant has fertile ground to plow in asserting such claims against his advisory or standby counsel following a conviction.

The dilemma of the legal profession in these cases is unique. Lawyers are forced to provide ill-defined professional services, if ever, on an ad hoc case-by-case analysis of appellate decisions, to defendants who do not seek them.[3] Counsel whose advice is rejected or spurned in virtually every other field of legal practice can sever the client relationship.

Only the *Faretta* defendant has the luxury of rejecting a lawyer and representing himself; having that rejected lawyer or another lawyer forced on him as standby or advisory counsel; and then, postconviction, claiming that counsel provided ineffective representation, the standards of which professional representation remain shrouded in mystery.

Let us consider a typical case. A criminal defense attorney has been representing a headstrong, difficult client to the best of his ability. That client files a *Faretta* motion which is granted. The attorney, now bereft of control over the case, is then appointed advisory or standby counsel. What is the attorney expected to do? Devote his time to the case at the expense of his other clients, and perhaps his practice, or merely check in from time to time? Sit at the counsel table or in the public gallery? Advise the defendant—a former client who was dissatisfied with his services to begin with—on the proper course of action, or remain silent? Conduct his own independent investigation or an evaluation of the defendant's proposed witnesses or strategies, or do the crossword? Draft motions and urge the defendant 'to consider filing them, or doodle? And how is standby counsel supposed to blithely resume representation after the propria persona defendant decides he is in over his head? How can the standby counsel get quickly up to speed? How can he repair the damage the defendant may have caused to the case?

It is all too easy for a court to say that an advisory or standby counsel may be found ineffective for his role in a case, when the courts have not adequately defined what that role is. It would be simpler and far more sensible if courts adopted the approach that a defendant may have an attorney, or have the right to represent himself—but may not have both.

The practice of the appointment of advisory or standby counsel should be reconsidered by the appropriate authority. If the defendant is his attorney, the defendant should be his *only* attorney. The concept of "self-representation-plus" is logically suspect and, however well-intentioned it may be, belies the very concept of self-representation. On the one hand, the state

---

[3]The *Faretta* lead opinion recognized the pitfalls of thrusting lawyers on unwilling defendants: "But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him." (422 U.S. at p. 834 [95 S.Ct. at p. 2540].)

allows the defendant the enshrined constitutional right to represent himself; on the other hand, along with the exercise of this right, an attorney is appointed to assist, or be prepared to back up, the defendant who is supposedly at the controls of his case. A self-representing defendant should be flying solo—without the comforting knowledge that if turbulence shakes his confidence, a superbly qualified pilot is sitting in the front row of first class.

B.  *The Power of the Court to Appoint a Public Defender as "Advisory" or "Standby" Counsel*

█ Recognizing that we are currently bound by higher authority to accept the concepts of advisory and standby counsel, we proceed to decide whether the public defender can be so appointed under existing law.

Section 27706 provides, in pertinent part, that "The public defender shall perform the following duties: [¶] (a) Upon request of the defendant or upon order of the court, the public defender shall *defend*, without expense to the defendant, . . . any person who is not financially able to employ counsel and who is charged with the commission of any contempt or offense triable in the superior, municipal or justice courts at all stages of the proceedings, including the preliminary examination. The public defender shall, upon request, give counsel and advice to such person about any charge against the person upon which the public defender is conducting the defense . . . ." (Italics added.)

In *Ligda*, the Solano County Public Defender was appointed as advisory and standby counsel to an erstwhile client granted self-representation. The public defender in *Ligda* argued that section 27706 limited the scope of his duty and power to defendants for whom he was actually conducting the defense. The First District Court of Appeal disagreed, ruling that the legislative intent of section 27706 was "clear" and showed a "progressive expansion of the duties of the public defender [citations] . . . ." (*Ligda, supra,* 5 Cal.App.3d at p. 825.) "He is required *to defend* any indigent defendant upon order of the court, at all stages of the proceedings. [¶] . . . The word 'defense' is clearly to be interpreted as embracing 'the assistance of counsel for his defense' as specified in the Sixth Amendment. That assistance clearly embraces more than control of the case in formal proceedings." (*Ibid.,* italics in original.)

*Ligda* also emphasized that a public defender is a ministerial officer of the court, whose conduct is subject to the control of the court in the furtherance of justice in connection with pending judicial proceedings. (5 Cal.App.3d at

pp. 825-826; Code Civ. Proc., § 128, subd. (a)(5).) "The assignment of counsel to assist the defendant, conducting his own defense, was thus both an appropriate and authorized procedure . . . . The deputy public defender who had been ordered to assist in conduct of the case was a person connected with a judicial proceeding before the court. Upon relieving him as counsel in a pending case, the court had the power to require him, both as an officer of the court as an attorney, and in his official capacity, to continue to 'assist' the defendant, pursuant to the constitutional mandate." (*Ligda, supra*, 5 Cal.App.3d at p. 826.)

With all due respect to our dissenting colleague, we believe *Ligda* correctly states the law.[4] In our view, *Littlefield*, which construes "defend" in section 27706 to exclude advisory or standby counsel, takes too narrow a view of the statute. The *Littlefield* majority likens such counsel to an understudy of a role in a play, standing in the wings and not taking an active part in the performance. (18 Cal.App.4th at p. 860.) We question that analogy. Although an advisory counsel's role is not clearly defined and is a limited one (see *People* v. *Clark* (1992) 3 Cal.4th 41, 112 [10 Cal.Rptr.2d 554, 833 P.2d 561]), it is apparent that more is required of him than simply standing by, waiting to take over; he is appointed to provide advice to the in propria persona defendant, which constitutes aiding in a criminal defense. His role seems to be more akin to the helpful director than a second-string actor.[5]

In conclusion, so long as the concepts of advisory and standby counsel are embedded in our law, and regardless of our sentiments expressed in part II.A. of this opinion, we hold that the public defender may be appointed to such status.[6]

---

[4]*Ligda* has been cited with apparent approval by the United States Supreme Court. (*Mireles* v. *Waco* (1991) 502 U.S. 9, 12, fn. 2 [112 S.Ct. 286, 288, 116 L.Ed.2d 9].)

[5]The *Littlefield* majority also distinguished *Ligda* on the ground that the deputy public defender representing the defendant *agreed* to the standby representation and did not object—it was only his boss, the Solano County Public Defender, who later overruled his deputy and took both a position against representation and the writ petition. (*Littlefield, supra*, 18 Cal.App.4th at pp. 859-860.) We find this a false distinction. Ultimately, *the* public defender in each case objected to the appointment.

[6]Petitioner also briefly argues that his appointment violated Penal Code section 987.05. This argument was not raised in the motion for relief from the appointment.

We do not reach petitioner's claim that his appointment constitutes a conflict of interest. This claim was argued in the motion for relief in only a single paragraph. The claim is premature. Petitioner has yet to articulate a specific conflict with regard to the conduct of the case.

III. DISPOSITION

The superior court's appointment of petitioner to serve as standby and advisory counsel to real party Robinson was proper. Accordingly, the petition for writ of mandate is denied. The stay heretofore imposed is dissolved.

Haning, J., concurred.

**JONES, J.,** Concurring and Dissenting.—I concur in part II.A. of the majority opinion. I entirely agree that experience and logic dictate a reexamination of the notion of appointing "advisory" and "standby" counsel in *Faretta* cases (*Faretta* v. *California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]). However, I part company from my colleagues when they follow the *Ligda* decision (*Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811 [85 Cal.Rptr. 744]) over *Littlefield* v. *Superior Court* (1993) 18 Cal.App.4th 856 [22 Cal.Rptr.2d 659], which I consider more persuasive. I do not believe the appointment of a public defender as advisory or standby counsel is authorized by Government Code section 27706.[1] I therefore respectfully dissent from part II.B. of the majority opinion.

In my view, *Littlefield* correctly interpreted section 27706. In that case the Los Angeles Public Defender, over objection, was appointed standby counsel for a former client granted self-representation. The *Littlefield* majority held that a standby counsel appointment was beyond the scope of the statutory authority of the public defender. "The office of the county public defender is authorized to provide representation only in those classes of cases specified in Government Code section 27706. [Citations.]" (*Littlefield* v. *Superior Court, supra,* 18 Cal.App.4th 856, 858-859, fn. omitted.)[2] The majority construed "defense" as active representation, to the exclusion of the status of standby counsel. As in the present case, the public defender in *Littlefield* ". . . was given no concrete task to perform. . . . Her sole assignment . . . was literally to stand by against the circumstance that it became necessary to revoke [the defendant's] propria persona status. . . ." (*Id.* at p. 859.)

"We conclude that the court is not empowered to appoint [the public defender's] office to serve as 'standby' counsel. The court's authority in appointing the public defender is limited to appointments to defend a person charged with a crime, or at least to assist in the defense of such person. [Citation.] A standby counsel represents no one. Like an understudy in a

---

[1]Unless otherwise indicated, all further references are to the Government Code.

[2]The dissent in *Littlefield* followed *Ligda.* (18 Cal.App.4th at pp. 861-862 (dis. opn. of Woods (A. M.). P. J.).)

play, his or her task is to wait in readiness to play a role should the occasion arise. Standing by is not defending." (*Littlefield* v. *Superior Court, supra,* 18 Cal.App.4th at p. 860.) Thus, the trial court "lacked statutory authority" and "acted in excess of its powers in ordering the public defender to act as 'standby' counsel for a defendant not represented by that officer." (*Ibid.*)

I respectfully submit that the *Ligda* court's interpretation of the word "defense" in section 27706 is too broad. In adopting the *Ligda* analysis, the majority fails to apply its own logic in adopting its theatrical analogy to the "helpful director" (see maj. opn., *ante,* p. 1398). A standby counsel clearly is an understudy; she plays no role in the "defense" of the case unless and until the defendant, like an actor taken ill, cannot continue to perform. An advisory counsel, in the theatrical analogy adopted by the majority, is hardly a director—at most, she is a prompter helping the actor with her lines, with no control over the quality of the performance. In reality, she provides no advice. She most often is doing nothing but taking notes, in the prayerful hope that she will not be thrust back into the role of advocate and defender, and later branded "ineffective" by an unhappy appellant. If she is thrust onto the defense stage, her props, sets and supporting cast must be assembled long after the curtain rises, and in full view of the audience.

I respectfully disagree with *Ligda*'s "ministerial officer" analysis. While it is true that a public defender is such an officer, and of course that attorneys generally are officers of the court, there are limits to the scope of the trial court's power over its officers. The authority of a military commander over her officers is awesome but not absolute—it is limited by the written laws and codes of conduct that govern the military organization. So too, the awesome power of the trial court over its ministerial officers is limited, by at least the canons of judicial conduct and by applicable statutes. Numerous cases proscribe the trial court's power to appoint the public defender in contravention of statutory law. (See, e.g., *Littlefield* v. *Superior Court* (1979) 98 Cal.App.3d 652, 654-655 [160 Cal.Rptr. 175] [trial court exceeded its jurisdiction in appointing public defender in civil paternity action, since section 27706 did not authorize such an appointment]; *Mowrer* v. *Appellate Department* (1990) 226 Cal.App.3d 264, 268 [276 Cal.Rptr. 38] [trial court exceeded its authority by appointing public defender to represent indigent misdemeanant on appeal]; *Brown* v. *Superior Court* (1981) 119 Cal.App.3d 189 [173 Cal.Rptr. 803] [superior court exceeded its jurisdiction by appointing the public defender to represent a nonindigent conservatee].)

I am not alone in my disenchantment with *Ligda*. That case was diplomatically questioned in *Chaleff* v. *Superior Court* (1977) 69 Cal.App.3d 721, 725, footnote 2 [138 Cal.Rptr. 735], with the court indicating "neither

agreement nor disagreement" with *Ligda*'s holding that a public defender may be appointed a standby counsel "despite the absence of authority for such an appointment in Government Code section 27706 which defines the authority of the public defender without mentioning or implying that the authority includes service as an adviser to a person conducting his own defense."

I would grant the petition for writ of mandate and relieve petitioner of his appointment as "advisory" and "standby" counsel.

Petitioner's application for review by the Supreme Court was denied August 26, 1998. Kennard, J., and Brown, J., were of the opinion that the application should be granted.