**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 97-4176

DESMOND CHARLES LAWRENCE,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-96-449-DWS)

Argued: May 8, 1998

Decided: November 19, 1998

Before WIDENER and HAMILTON, Circuit Judges, and
FRIEDMAN, United States District Judge for the Eastern District
of Virginia, sitting by designation.

_____

Affirmed in part and vacated and remanded for resentencing by pub-
lished opinion. Judge Widener wrote the opinion, in which Judge
Hamilton and Judge Friedman joined.

_____

**COUNSEL**

**ARGUED:** Allen Bethea Burnside, Assistant Federal Public
Defender, Columbia, South Carolina, for Appellant. John Michael
Barton, Assistant United States Attorney, Columbia, South Carolina,
for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney,

Kelly E. Shackelford, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Desmond Lawrence appeals to this court following his conviction and sentencing on one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a) and a second count of bank larceny in violation of 18 U.S.C. § 2113(b). Lawrence raises a number of issues on appeal, the principal of which are error based on the fact that he voluntarily left the courtroom during the trial, and error regarding the upward departure awarded by the district court at sentencing. We confirm the conviction but vacate the sentence and remand for resentencing.

I.

On June 14, 1996, Desmond Lawrence committed two offenses against financial institutions in Columbia, South Carolina. The first, attempted bank robbery under 18 U.S.C. § 2113(a), occurred when Lawrence passed a handwritten demand note to a teller at First Union Bank. The teller, unable to satisfy Lawrence's demand, dialed 911 causing him to flee the scene. Later that afternoon Lawrence approached a second teller, this time at the Carolina First Bank. When this teller opened the cash drawer, Lawrence reached in, grabbed some money, and ran. In his flight, Lawrence left at the scene papers identifying himself and the demand note from the earlier offense. This second offense is charged as bank larceny under 18 U.S.C. § 2113(b).

Lawrence requested permission to appear pro se as one of trial counsel. The magistrate judge granted his request, and Lawrence later pleaded guilty in the district court to the charge of bank larceny. Prior to trial, Lawrence requested, and the district judge granted, standby counsel to assist him with any procedural issues that might arise at trial.

2

On the day of trial, and after its beginning, Lawrence made a request that he be removed from the courtroom during the trial proceedings. After much debate and deliberation, which included a conference between Lawrence and his standby counsel regarding the implications of his request, the court allowed Lawrence to leave the courtroom. Lawrence was allowed to remain downstairs throughout jury selection and the presentation of evidence before returning to the courtroom for the return of the jury's verdict. The jury found him guilty.

Following his conviction, the district court sentenced Lawrence. The court, on the government's motion, determined that Lawrence's criminal history category failed to account for the severity of his past offenses. In imposing an upward departure, the court sentenced Lawrence to 360 months, consecutive sentences of the statutory maximum on both counts.

Lawrence argues four points on appeal. First, he contends that by restricting his standby counsel's advice to procedural matters, the court violated his Sixth Amendment right to counsel. He also claims the district court abused its discretion in connection with the court's refusal to grant his requests for continuance. Lawrence further argues that the court erred in allowing him to remain outside of the courtroom during trial. Finally, he claims error in the amount of the court's upward departure.

II.

A.

The Sixth Amendment does not require a court to grant advisory counsel to a criminal defendant who chooses to exercise his right to self-representation by proceeding pro se. United States v. Singleton, 107 F.3d 1091, 1100 (4th Cir. 1997); see McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (rejecting a Sixth Amendment guaranteed right to "`hybrid' representation"). Thus, the district court, in keeping with its broad supervisory powers, has equally broad discretion to guide what, if any, assistance standby, or advisory, counsel may provide to a defendant conducting his own defense. See Singleton, 107 F.3d at 1103 (discussing the trial court's discretion). The limits placed by the

court on Lawrence's use of his standby counsel in this instance were reasonable. It simply restricted the standby counsel's advice to procedural matters. See McKaskle, 465 U.S. at 183. When circumstances changed due to Lawrence's request to leave the courtroom, the court demonstrated its responsiveness, even to Lawrence's extraordinary request, by extending the scope of standby counsel's representation to include a substantive discussion of the implications of waiving his right to be present at his own trial. Placing reasonable limits on the advice to be given by standby counsel that the court was under no obligation to provide in the first instance does not constitute an abuse of discretion.[1]

B.

Lawrence moved for a continuance on January 6, 1997, the morning set for jury selection and trial. He had, on December 20, 1996, previously moved for a continuance, which was denied. Although his brief in this court contains a sub-section entitled Prejudice, he does not state even now any prejudice which resulted from the denial of his December 20th motion for a continuance, except"lack of time he had to research legal issues," which reason is insufficient, as we will explain below.

He now claims that the reason he should have had a continuance on January 6, 1997 was that the discovery materials he had requested were not supplied until December 19, 1996; that he did not have free access to legal reference materials until December 18, 1996; that his telephone calls were monitored by the United States marshal; and that an investigator was not supplied him until December 24, 1996. He is unable on appeal to point to any prejudice by the January 6th denial of his continuance. We note with respect to telephone calls that the marshal was instructed not to disclose the substance of any of the calls except for security reasons, and that the defendant does not claim that he wished to speak to an attorney at that time to which a privilege might attach. Also, he named no other person to whom he would have spoken absent the monitor.

_____

[1] In addition, Lawrence requested and agreed to standby counsel. A. 149-151. So any error in that respect is invited.

His first request for an investigator, which was denied, failed to name any witness sought other than a psychiatrist or a psychologist, whose name Lawrence already had, so the district court correctly denied that request. A later proper request was granted.

Lawrence now claims that one John Thompson was with him when he attempted to rob the first bank and that Thompson was not located and would testify that the note that Lawrence gave to the teller was not a demand for money but rather "a set of instructions received from an employer." While John Thompson was not found, the defendant never caused a subpoena for John Thompson to be issued and, in all events, the record shows that the note given to the teller was introduced into evidence as exhibit 16, so the jury had a chance to ascertain whether it was "a set of instructions received from an employer" or a demand note.

The demand note, which Lawrence now calls "a set of instructions received from an employer," follows and at once shows the frivolity of certain aspects of this appeal:

> THIS IS A ROBBERY
> ALL $100'S $50'S $20'S
> IN ENVELOPE AND YOU
> WON'T BE HURT
>
> (Other handwritten, unidentifiable numbers appear below the text)

A district court is entitled to broad discretion with respect to a decision to deny a continuance. Morris v. Slappy, 461 U.S. 1, 11 (1983). Furthermore, absent a presumption of prejudice, specific errors must be shown which "undermine confidence in the outcome of the trial" to constitute reversible error. United States v. LaRouche, 896 F.2d 815, 823 (4th Cir. 1990). Such errors have not been shown.

Contrary to the claims on appeal, Lawrence had ample opportunity to develop his case for trial. As early as July 10, 1996, the magistrate judge appointed federal public defender Susan Hitt, Esq. to represent Lawrence. The very next day she was filing motions on his behalf,

5

including a motion for discovery and inspection. Miss Hitt represented Lawrence from July 10, 1996 until November 14, 1996, when the magistrate judge granted Lawrence's motion to appear pro se. At any point during those four months, Lawrence could have utilized her professional knowledge, skill and time to find any witnesses who might have assisted in the preparation of his case.

Later, while appearing pro se, Lawrence had only to make reasonable requests to the court to obtain assistance. Once he made an adequate motion for an investigator on December 23, 1996, on the very next day the court ordered that one be provided to him. On December 30, 1996, the court provided Lawrence with Cameron Littlejohn, Esq. as advisory counsel to assist him with his procedural concerns, and, on January 7, 1997, immediately following his conviction, the court appointed Allen Burnside, Esq. to represent Lawrence on his motion for new trial. While Lawrence elected to represent himself at sentencing, the court made Burnside available to him for that purpose, and Burnside continues to represent him today. Thus, Lawrence had access to ample resources for many months which should have allowed him to fully develop his case for trial. It is not the duty of the court to grant a pro se defendant a continuance shortly before or on the day of trial because he is then dissatisfied, as here, with how he has utilized those resources.

C.

The next claim of Lawrence is that the district court committed reversible error when it allowed him, a criminal defendant representing himself, to remove himself from the courtroom after the time the case was called and the trial began, but before the jury was empaneled, and to remain absent throughout the trial until he was returned to the courtroom for the return of the verdict. In addition to remembering that it was at Lawrence's specific request that he was removed from the courtroom, we also should remember that he had been indicted on July 9, 1996 and arraigned on July 10, 1996. Subsequently, Count Two of the indictment was changed by superseding indictment on November 13, 1996 to bank larceny from bank robbery. On December 30, 1996, Lawrence, indeed, had appeared and pleaded guilty to the bank larceny charge, and the remaining part of the trial with which we are concerned is only on the bank robbery charge.

6

On the bank robbery charge, Lawrence was present when the case was called on January 7, 1997, and at that time he asked that he be permitted to absent himself from the courtroom until the return of the verdict. As we have related, the court permitted Lawrence to discuss that request with his attorney prior to acting on it, and after that discussion, the district court granted the request and Lawrence was removed from the courtroom, to return only for the return of the verdict.

There is no contention made to the contrary, and there is no doubt that the district court had jurisdiction in this case. The right of a criminal defendant to be present at his own trial is beyond dispute. Formerly, that right was considered unwaivable in felony cases. See Crosby v. United States, 506 U.S. 255, 259 (1993). In Diaz v. United States, 223 U.S. 442 (1912), however, the Court authorized a limited exception so that, in a case after the trial had begun in his presence, the defendant voluntarily absented himself, that would not nullify what had been done or prevent the completion of the trial. To the contrary, the absence of the defendant operated as a waiver of his right to be present. See Diaz, 223 U.S. at 442; Crosby, 566 U.S. at 260, 261. Crosby was a case in which the defendant, being on bail, did not appear at the beginning of his trial and was tried in his absence. The Court held that Fed. R. Crim. P. 43(a) required the defendant to be present at the arraignment at the time of the plea and at every stage of the trial, including the empaneling of the jury and the return of the verdict, and it reversed Crosby's conviction because the trial had been commenced in his absence. Crosby was decided under Rule 43 and did not reach the Constitutional question of a trial in the absence of the defendant. The Court, in Crosby, cited the statement of Judge Sanborn, one of the drafters of Rule 43, to the effect that if, during a trial, a defendant disappeared, there would be no reason why the trial should not proceed without him. This is consistent with Diaz. Although Diaz was decided under Philippine law, the Court there acknowledged the identical or similar provision in the Sixth Amendment, and we see no reason that we should not apply the holding of Diaz and Rule 43[2] to this case.

_____

[2] Fed. R. Crim. P. 43(b) provides that when such a defendant, initially present at trial, voluntarily absents himself, he has waived his right to be present.

Because Lawrence was present at the beginning of his trial and voluntarily absented himself, there is no error in this case. Even if there be error, it is invited error brought on at Lawrence's own request and, as such, is not reversible. United States v. Jackson, 124 F.3d 607, 617 (4th Cir. 1997); United States v. Harare, 23 F.3d 74, 75 (4th Cir. 1994); Wilson v. Lindler, 8 F.3d 173, 174 (4th Cir. 1993) (en banc).

D.

Finally, we turn to the matter of the upward departure imposed on Lawrence by the trial court at sentencing. The court increased Lawrence from an offense level of 22 and a criminal history category of V, a range of 77 to 96 months, to an offense level of 38 and a criminal history category of V, a range of 360 months to life. Following that, it sentenced Lawrence to consecutive terms of 240 months on Count One and 120 months on Count Two, the statutory maximum for each crime.

The court did not indicate which of the United States Sentencing Guidelines (U.S.S.G. or Guidelines) sections it used in making its decision to depart. It appears, based on its statement that the criminal history category understated the criminal activity, that the court imposed this upward departure pursuant to Guideline§ 4A1.3. Section 4A1.3 permits such a departure "when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." At sentencing, the court decided to "grant[ ] the motion for upward departure, based on the factors, I do think the criminal history category in this report understates this criminal activity." Likelihood of recidivism and Lawrence's dangerousness were the other reasons given for the departure, and Lawrence acknowledged in open court at sentencing that he would break the law if given a chance. The trial court did not explain which criminal conduct it believed to be unaccounted for or the method that it used to reach the guideline range that it chose. Thus, we find it necessary to vacate Lawrence's sentence and remand for resentencing with a more complete explanation of how the court arrived at the sentence.

If a court chooses to depart based on an inadequately represented criminal history, it has two options. "[A] sentencing court should

8

depart `first to the next higher category and . .. move on to a still higher category only upon a finding that the next higher category fails adequately to reflect the seriousness of the defendant's record.'" United States v. Cash, 983 F.2d 558, 561 n7 (4th Cir. 1992) (quoting United States v. Rusher, 966 F.2d 868, 884 (4th Cir. 1992)). If the court gets to level VI and determines that its sentencing options are still insufficient "and that the defendant's prior criminal conduct is of sufficient seriousness to conclude that he should be treated as a career offender, the district court may depart directly to the guideline range applicable to career offenders similar to the defendant." Cash, 983 F.2d at 562.

In accordance with this procedure, the court in the instant case should initially have considered the guidelines for offense level 22 and criminal history category VI, a range of 84 to 105 months, and determined whether or not it adequately represented the seriousness of Lawrence's criminal record.

If, having undertaken that analysis, the court was dissatisfied with that result, it should then have considered its other options. See Cash, 983 F.2d at 562; United States v. Harrison, 58 F.3d 115, 119 (4th Cir. 1995). The government argues that the record supports a de facto career offender status, a question on which we express no opinion. We will leave that question initially to the district court.

Accordingly, we affirm Lawrence's conviction but vacate his sentence, remanding the case for resentencing.

AFFIRMED IN PART; VACATED AND REMANDED FOR RESENTENCING

9