563 S.E.2d 781

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Clifford Allen POWERS, Defendant Below, Appellant.**

No. 28459.

Supreme Court of Appeals of West Virginia.

Submitted May 8, 2001.

Decided May 30, 2001.

Charles E. Anderson, Fairmont, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Kelli D. Talbott, Senior Assistant Attorney General, Charleston, for the Appellee.

DAVIS, Justice.

Clifford Allen Powers appeals his convictions for the offenses of burglary, grand larceny, third offence shoplifting, and breaking and entering. Mr. Powers was permitted to proceed *pro se* at trial with the assistance of standby counsel. He now argues that the Circuit Court of Harrison County erred by refusing to allow standby counsel to take over his trial defense. We conclude that the circuit court did not abuse its discretion in denying Mr. Powers' request.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Clifford Allen Powers (hereinafter "Powers"), defendant below and appellant herein, was charged with various offenses in three separate indictments. In the first indictment, number 97–F–124–2, Powers was charged with burglary, grand larceny, and third offence shoplifting. The second indictment, number 97–F–198–2, charged him with breaking and entering. Finally, he was charged with third or subsequent offense shoplifting in the third indictment, number 97–F–199–2. Elizabeth Warnick (hereinafter Warnick) was appointed to represent Powers on all charges and three separate trials were scheduled. The trial on the charges contained in the first indictment was scheduled for October 6, 1997, before Judge John Louis Marks, Jr. The remaining charges were to be tried before Judge Thomas A. Bedell. The charge of breaking and entering was scheduled for trial on December 8, 1997, and trial on the third offense shoplifting charge was to begin on October 27, 1997.

Conflicts quickly arose between Powers and his appointed counsel. Powers desired that all the charges against him be consolidated and tried without a jury. Warnick disagreed. In addition, Powers apparently accused Warnick of lying and conspiring against him. He also complained that she was inexperienced and indicated that he might pursue a claim of ineffective assistance of counsel. On September 17, 1997, Warnick filed a motion to withdraw as counsel in all three matters. Judge Marks initially denied Warnick's motion to withdraw. However, he later granted Warnick's motion by order entered on October 7, 1997. As a consequence of Warnick's withdrawal, the trial scheduled for October 6, 1997, was continued until December, 1997. Thereafter, Judges Marks and Bedell both appointed Neal J. Hamilton

(hereinafter "Hamilton") to represent Powers.

After his appointment, Hamilton filed a motion requesting that all three trials be continued. In addition, and at Powers' insistence, Hamilton renewed a motion, previously filed by Warnick, to consolidate the three indictments into a single trial. Judge Marks then transferred his case to Judge Bedell. Judge Bedell consolidated all the charges and set trial for April, 1998.

On January 23, 1998, Hamilton filed a motion to withdraw due to various accusations Powers had made against him, and Powers' desire that Hamilton withdraw. Powers had also threatened to file ethics charges against Hamilton. Judge Bedell denied the motion. However, in February, 1998, Powers began filing *pro se* motions. Judge Bedell docketed the motions, but refused to consider them as Powers had not been authorized to proceed *pro se*.

During a hearing in February, 1998, Powers interrupted an oral argument Hamilton was making to the circuit court, and began to argue with Hamilton over trial strategy. Powers then orally requested that Hamilton be removed as his counsel. Judge Bedell ordered Powers to submit a statement of all his grounds for requesting Hamilton's removal. Powers failed to submit the statement and Bedell, therefore, denied the motion. Subsequently, on March 18, 1998, Powers filed a *pro se* document purporting to notify the circuit court that Hamilton had been terminated as Powers' counsel. On March 20, 1998, Hamilton filed a second motion to withdraw stating that Powers had again threatened ethics charges and had also expressed a desire to proceed *pro se*.

At a hearing on March 26, 1998, Judge Bedell initially denied Hamilton's request to withdraw stating:

[Powers] isn't going to be happy with anybody and I know that and he knows that and you [Hamilton] know that. I mean he has had numerous attorneys in my limited dealings with Mr. Powers and I don't carry forth any animosity or ill will or bias or prejudice as a result of these or the prior dealings, but every attorney he has had, he has voiced these same concerns. He has conducted himself in the same manner and whether it is you or F. Lee Bailey or whomever, we are going to be in the same boat and I understand that and I don't, you know, those are just the cards that are out on the table.

However, Powers unequivocally asked to proceed *pro se*. After determining that Powers understood all of the consequences and risks associated with his *pro se* representation, and cautioning Powers that if he released Hamilton as counsel he would not be permitted to change his mind in an untimely manner and expect the trial court to re-appoint counsel, Judge Bedell allowed Powers to proceed *pro se*.

Later, on April 6, 1998, Judge Bedell *sua sponte* ordered Hamilton to act as standby counsel for Powers for the remainder of the proceedings.[1] At a hearing on April 9, 1998, four days prior to trial, Judge Bedell instructed Powers on the role Hamilton would play as standby counsel. In this regard Judge Bedell specifically stated:

First, I would not expect [Hamilton] to in any way formally address the Court or the jury during the actual conduct of the trial of this matter. He would not be required or obligated nor would he be allowed to make opening statements or closing statements or note objections on evidentiary matters or to be making motions on behalf of the Defendant.

Let me indicate he would not be examining witnesses either on direct or cross-examination, but his role in this matter would be to serve as a legal consultant to Mr. Powers, to answer any questions that he may have. Mr. Powers may not have any questions for [Hamilton] during the conduct of the proceeding, and he wouldn't have to talk to him at all. But he's there as an available resource since Mr. Powers, as we've gone over, is expected to know all of the rules of evidence and all of the rules

---

1. On that same date, Powers filed a pleading entitled "GROUNDS" wherein he essentially accused Warnick and Hamilton of unethical behavior; of conspiring against him with each other, with the trial court, and with the prosecutor; and of ineffective representation.

of criminal procedure and all of the substantive law, as well.

Mr. Hamilton would not be expected to prepare or file any motions or submit any jury instructions or any of those functions that the typical defense counsel would be required to perform during the conduct of a felony matter.

Powers then asked that Warnick or another Public defender be appointed to defend him. The court informed Powers that he could either proceed with Hamilton or, in the alternative, the court would contact the Public Defender's Office and inquire as to whether they would be willing to either take over Powers defense three days prior to trial or to serve as standby counsel. The Judge informed Powers that if the Public Defender declined to accept the case, he would respect their decision. Powers elected to proceed *pro se* with Hamilton as standby counsel.

The three-day jury trial began on April 13, 1998. On the second day of trial the prosecution rested. Then, during a bench conference out of the presence of the jury, Powers asked the court to permit Hamilton to "continue [his] case." The trial court denied Powers' request stating:

Okay, Mr. Powers, we've addressed this on numerous occasions that—that request will be denied. I gave you what you wanted by firing, in essence, Mr. Hamilton a number of weeks or months ago. You didn't want him as standby Counsel as recently as last week—I mean—I'm not sure—you know—it appears to the Court, Mr. Powers, that you're making these requests even though they've been ruled upon time and time again is just to frustrate the ends of justice and you wanted to be your own attorney, sir, and you got what you wanted, rightfully or wrongfully, so that request would be denied.

The jury returned a verdict of guilty on all counts and the State filed a recidivist information. Powers entered a conditional plea[2] of guilty in the recidivist action and was ultimately sentenced to consecutive terms of life imprisonment as a habitual criminal, and

one to ten years for each of the felony offenses for which he was convicted. Powers appealed his convictions to this Court asserting several assignments of error. We granted review on the sole issue of whether the trial court erred in refusing to allow standby counsel to take over Powers' representation at trial.

## II.

### STANDARD OF REVIEW

■ Powers initially argued in his brief that the question of whether a criminal defendant who has asserted the right to defend him or herself may subsequently relinquish that right and have standby counsel carry on his or her defense is purely legal and, thus, subject to *de novo* review. During oral argument before this Court, however, Powers conceded that an abuse of discretion standard applies to this issue. Similarly, the State contends that abuse of discretion is the proper standard for our review. We agree.

Courts addressing this issue have concluded that once a defendant has elected to proceed *pro se,* there is no absolute right to then relinquish the right of self-representation and have new or standby counsel appointed to assume the defense. In *United States v. West,* 877 F.2d 281 (4th Cir.1989), which was on appeal from the United States District Court for the Northern District of West Virginia, the Court of Appeals was asked to decide whether the District Court had erred in denying a *pro se* defendant's request for the appointment of a lawyer, which request was made eleven days prior to trial. The court of appeals explained that "[t]he determination of whether or not a motion for substitution of counsel should be granted is within the trial court's discretion, and the court is entitled to take into account the countervailing public interest in proceeding on schedule." *West,* 877 F.2d at 286.

Similarly, the Supreme Court of North Carolina has applied an abuse of discretion standard to determine that a trial court did

---

**2.** The plea was conditioned upon Powers' right to appeal legal issues raised by the filing of the recidivist action.

not err in denying a *pro se* defendant's request to have standby counsel reinstated. *State v. Blankenship,* 337 N.C. 543, 447 S.E.2d 727 (1994), *overruled on other grounds by State v. Barnes,* 345 N.C. 184, 481 S.E.2d 44 (1997). *See also United States v. Merchant,* 992 F.2d 1091, 1095 (10th Cir. 1993) ("Once a defendant exercises his constitutional right to defend himself and proceed *pro se,* he does not have the absolute right to thereafter withdraw his request for self representation and receive substitute counsel.... We review a district court's refusal to substitute [standby] counsel for an abuse of discretion." (citations omitted)); *Brookner v. Superior Court,* 64 Cal.App.4th 1390, 1394, 76 Cal.Rptr.2d 68, 71 (1998) ("[T]he fact that a self-representing defendant may change his mind does not require a 'backup' appointment. A defendant who suddenly eschews self-representation may find that he will not be relieved of his original choice. A trial judge is not obligated to restore counsel if a *Faretta* defendant changes his mind in midtrial and no longer wants to represent himself. A request for restoration of the services of counsel is left to the sound discretion of the trial court...."); *Cf. State v. Sheppard,* 172 W.Va. 656, 667, 310 S.E.2d 173, 184 (1983) (applying an abuse of discretion standard to decide whether trial court erred in refusing to allow court appointed counsel to withdraw from case); *Id.* at 672, 310 S.E.2d at 189 (stating that "[a]s a general rule, where the request to defend without the assistance of counsel is made in the first instance on the morning of trial, the defendant's right to appear and defend in person depends on the facts and circumstances of each case and is ordinarily a matter within the discretion of the trial court." (citations omitted)); *See generally* I Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–80 (2d ed.1993) ("a defendant does not have the absolute right to have regular counsel reinstated once he has agreed to proceed *pro se.* The defendant cannot be permitted to engage in the practice of hiring and firing appointed counsel." (discussing *West* )).

Based upon the foregoing authority, we hold that when a criminal defendant who has asserted the right of self-representation seeks to relinquish that right and utilize substitute counsel, this Court will apply an abuse of discretion standard of review to the trial court's decision on the matter. Having established the proper standard for our review, we now consider the substantive issue before us.

## III.

## DISCUSSION

Powers asserts that, because the right of self-representation is more easily waived than the right to the assistance of counsel, he should have been permitted to waive his right of self-representation even after it had been asserted. Although the State had completed its case-in-chief when Powers sought reappointment of standby counsel, Powers argues that counsel should have been reappointed as he was familiar with Powers' case and there is nothing in the record demonstrating that the appointment would have delayed the proceedings. In response, the State argues that once a defendant exercises his right to proceed *pro se* and significant trial proceedings have commenced, the defendant does not thereafter have the absolute right to surrender his *pro se* status and have counsel assigned to take over. Moreover, the State notes, Powers had been specifically warned approximately two weeks before trial that if he chose to proceed *pro se* he would not be permitted to belatedly change his mind and request appointment of counsel.

■ It has long been recognized that the right to the assistance of counsel guaranteed by the Sixth Amendment to the Constitution of the United States, and by Article III, Section 14 of the West Virginia Constitution, embodies a correlative right to waive the assistance of counsel. *See Faretta v. California,* 422 U.S. 806, 814, 95 S.Ct. 2525, 2530, 45 L.Ed.2d 562, 570 (1975) (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)); Syl. pt. 7, *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983).[3] *See also State v.*

3. It should be noted, however, that the right to    waive the assistance of counsel is qualified. Be-

*Layton,* 189 W.Va. 470, 476, 432 S.E.2d 740, 746 (1993) ("Both this Court and the Supreme Court of the United States have recognized that a criminal defendant has a constitutional right to represent himself during a criminal trial."). In the instant case, we are asked to determine if, or under what circumstances, a defendant who has waived his or her right to counsel and successfully elected to proceed *pro se* may subsequently revoke that waiver and have standby counsel[4] take over his or her defense. In other words, we

must determine what standard a trial court should use in exercising its discretion in this regard. To answer this question, we first review the role of standby counsel.

At the outset, we note that there appears to be some confusion over the proper function of standby counsel. As one court has observed:

> Hybrid modes of representation pose particularly serious dilemmas for the appointed attorney. The terms "advisory counsel" and "standby counsel" are sel-

---

fore a defendant may waive the assistance of counsel, a trial court must assure itself that the defendant is competent and fully understands all the implications of his or her decision:

> A defendant in a criminal proceeding who is mentally competent and *sui juris,* has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which does not disrupt or create undue delay at trial.

Syl. pt. 8, *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983).

4. At this point, it should be noted that there is no absolute right to standby counsel. In *Faretta v. California,* the United States Supreme Court commented, in a footnote, that when a defendant waives his right to counsel, the trial court "*may*—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562, 581 n. 46 (1975) (emphasis added) (citation omitted). As evidenced by the *Faretta* Court's use of the word "may," a defendant electing to proceed *pro se* does not have a right to the appointment of standby counsel and may be required by the trial court to proceed unassisted with his or her defense. *See United States v. Lawrence,* 161 F.3d 250, 253 (4th Cir.1998) ("The Sixth Amendment does not require a court to grant advisory counsel to a criminal defendant who chooses to exercise his right to self-representation by proceeding *pro se.*" (citations omitted)); *United States v. Webster,* 84 F.3d 1056, 1063 (8th Cir.1996) ("Appointment of standby counsel is within the discretion of the district court, and a *pro se* defendant does not enjoy an absolute right to standby counsel." (citations omitted)); *United States v. Patterson,* 42 F.3d 246, 248 (5th Cir.1994) (per curiam) ("At best, [the defendant] was asking the district court to appoint advisory counsel—an attorney who would be limited to assisting him in

technical matters. The sixth amendment right to counsel does not extend to such a request." (citations omitted)); *Locks v. Sumner,* 703 F.2d 403, 408 (9th Cir.1983) ("If the right to co-counsel is not of constitutional dimension, . . . we fail to see why the right to advisory counsel should be afforded higher status. The decision to allow a defendant to proceed with either form of hybrid representation is best left to the sound discretion of the trial judge." (citation omitted)); *Brookner v. Superior Court,* 64 Cal.App.4th 1390, 1393, 76 Cal.Rptr.2d 68, 70 (1998) ("[A]n advisory or standby counsel is not 'constitutionally guaranteed' to a criminal defendant." (citation omitted)); *State v. Guitard,* 61 Conn.App. 531, 535, 765 A.2d 30, 34 (2001) (" '[A] defendant does not have a state or federal constitutional right to standby counsel. . . . Once a defendant has properly embarked on the path of self-representation, his constitutional right to counsel ceases.' " (citations omitted)); *People v. Mirenda,* 57 N.Y.2d 261, 265–66, 455 N.Y.S.2d 752, 753–54, 442 N.E.2d 49, 50–51 (1982) ("[Defendant] maintains that he had the right to proceed *pro se,* while simultaneously being advised by appointed 'standby' counsel. No such right is guaranteed by either the State or Federal Constitution. It is true that the appointment of standby counsel to assist a *pro se* defendant has received judicial approval. . . . The assignment of standby counsel, however, is a matter of trial management. As such, it is a subject for the discretion of the Trial Judge, whose decision will not be disturbed by this court unless the Judge abuses that discretion." (footnote omitted) (citations omitted)); *City of Fargo v. Rockwell,* 597 N.W.2d 406, 411 (N.D.1999) ("[T]here is no federal or state constitutional right to standby counsel. . . . Standby counsel *may* be appointed within the discretion of the trial court 'to assist the defendant and to represent the defendant if termination of self-representation is necessary.' " (emphasis added) (citations omitted)). *Cf. McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122, 136 (1984) (stating, in case where standby counsel was permitted to participate actively in trial rather than simply render advice to defendant, that "*Faretta* does not require a trial judge to permit 'hybrid' representation of the type Wiggins was actually allowed.").

dom defined with any sort of analytical precision. (*See, e.g.,* [*People v. Hamilton,*] 48 Cal.3d[, 1142,] 1164, fn. 14, 259 Cal.Rptr. 701, 774 P.2d 730[ (1989) ] ("The cases have loosely used such terms as ... advisory counsel,' 'standby counsel,' and 'hybrid representation' to describe a multitude of situations in which both the accused and professional counsel are involved in the presentation of the defense case.")).

*Brookner,* 64 Cal.App.4th 1390, 1394–95, 76 Cal.Rptr.2d 68, 71. The *Brookner* Court further commented:

Let us consider a typical case. A criminal defense attorney has been representing a headstrong, difficult client to the best of his ability. That client files a *Faretta* motion which is granted. The attorney, now bereft of control over the case, is then appointed advisory or standby counsel. What is the attorney expected to do? Devote his time to the case at the expense of his other clients, and perhaps his practice, or merely check in from time to time? Sit at the counsel table or in the public gallery? Advise the defendant—a former client who was dissatisfied with his services to begin with—on the proper course of action, or remain silent? Conduct his own independent investigation or an evaluation of the defendant's proposed witnesses or strategies, or do the crossword? Draft motions and urge the defendant to consider filing them, or doodle? And how is standby counsel supposed to blithely resume representation after the [*pro se*] defendant decides he is in over his head? How can the standby counsel get quickly up to speed? How can he repair the damage the defendant may have caused to the case?

64 Cal.App.4th at 1396, 76 Cal.Rptr.2d at 72. *See generally,* Anne Bowen Poulin, *The Role of Standby Counsel in Criminal Cases: In the Twilight Zone of the Criminal Justice System,* 75 N.Y.U.L.Rev. 676, 676, 678 (2000) (observing that "[t]he role of standby counsel ... has never been clearly defined" and arguing that "standby counsel's role should be strengthened and more clearly delineated.").

As indicated above, the ambiguity over the role of standby counsel arises, at least in part, from the variety of ways courts have defined the role. *See, e.g., McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (permitting standby counsel to participate actively at trial, *i.e.,* conducting *voir dire* of a witness and giving opening argument); *Faretta,* 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46 (indicating standby counsel would generally "aid the accused if and when the accused requests help, and ... be available to represent the accused in the event that termination of the defendant's self-representation is necessary." (citation omitted)); *United States v. Lawrence,* 161 F.3d 250 (1998) (restricting standby counsel's advice to procedural matters); *United States v. Patterson,* 42 F.3d 246, 248 (5th Cir.1994) (per curiam) (defining "advisory counsel" as "an attorney who would be limited to assisting [defendant] in technical matters"); *Blankenship,* 337 N.C. 543, 447 S.E.2d 727 (informing defendant that standby counsel could answer his legal questions and would be permitted to resume defense if defendant decided to relinquish right of self-representation, but would not be permitted to otherwise participate in trial, *e.g.,* to object to incompetent evidence or appear on behalf of defendant).

Additionally, there appear to be three different terms that are frequently used in the description of such counsel: "standby," "advisory," and "hybrid." It is not completely clear, however, whether these terms have similar, or distinctly different, meanings. *Compare McKaskle,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (implying that hybrid representation refers to counsel being permitted to participate actively in trial rather than simply rendering advice to defendant), *with State v. Overholt,* 77 Ohio App.3d 111, 601 N.E.2d 116 (1991) (reasoning that a *pro se* defendant's request that counsel take over after a trial is underway amounts to "hybrid representation."). *See also Patterson,* 42 F.3d at 248 (defining "advisory counsel" as "an attorney who would be limited to assisting [the defendant] in technical matters," and then referring to the arrangement as "hybrid representation."); *Locks v. Sumner,* 703 F.2d 403 (9th Cir.1983) (referring to "advisory

counsel" as a form of "hybrid representation"). In fact, this Court recently observed the confusion surrounding these terms in footnote 4 of *State v. Layton*, 189 W.Va. at 477, 432 S.E.2d at 747, wherein we commented that "[i]t has been suggested that there is a· technical distinction between a 'hybrid' counsel and a 'standby' or 'advisory' counsel situation. Note, 12 Val. L.R. 331, *The Accused as Co–Counsel: The Case for the Hybrid Defense* (1977). However, the courts have not, as yet, apparently generally recognized the distinction."

■ Trial courts can easily remedy the confusion surrounding the differing roles apparently filled by standby counsel by exercising their supervisory powers to specifically define or restrict the duties of standby counsel whenever such counsel is appointed. *See Lawrence*, 161 F.3d at 253 ("[T]he district court, in keeping with its broad supervisory powers, has equally broad discretion to guide what, if any, assistance standby, or advisory, counsel may provide to a defendant conducting his own defense." (citation omitted)). Given the lack of clarity over what, exactly, is the role of standby counsel, we find it is of the utmost importance that, when appointing standby counsel, trial courts do in fact define, precisely, the role counsel is expected to assume. Furthermore, trial courts should clearly inform counsel and the defendant of that role. Accordingly, we hold that when a circuit court appoints standby counsel to assist a criminal defendant who has been permitted to proceed *pro se*, the circuit court must, on the record at the time of the appointment, advise both counsel and the defendant of the specific duties standby counsel should be prepared to perform. For example, the court must state whether counsel should be prepared to take over the case at the defendant's request.[5]

■ In the instant case, the trial court properly advised Powers and Hamilton of the duties expected of Hamilton as standby counsel. Powers' request that Hamilton be reinstated as his counsel was outside the scope of the duties defined by the circuit court. We

hold that when a *pro se* criminal defendant requests the trial court to permit standby counsel to assume a duty set forth by the court in connection with its appointment of standby counsel, the court, in a proper exercise of its discretion, should grant the request. However, where, as here, the defendant requests that standby counsel assume a role that is outside of the duties established by the court, further consideration by the circuit court is appropriate.

Although a circuit court has absolutely no obligation to require that standby counsel be prepared to take over for a *pro se* defendant at the defendant's request, we decline to hold that in the absence of such a requirement a circuit court should never appoint standby counsel to take over a trial upon the request of a defendant. We believe that, under the proper circumstances, there may be good cause to grant such a request. In determining whether good cause exists to the degree that standby counsel should be required to exceed the duties initially outlined by being appointed to take over a case, various interests must be considered. For example, trial courts have an interest in maintaining orderly trials and avoiding unnecessary delays. Indeed, we have previously declared that "[a] defendant may not assert or exercise the right of self-representation as a means of unduly delaying the proceedings." *Sheppard*, 172 W.Va. at 670, 310 S.E.2d at 187 (citations omitted). Likewise, a *pro se* defendant may not re-assert his or her right to counsel as a means of delaying or disrupting the proceedings. *See* I Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–80 (2d ed. 1993) ("[A] defendant does not have the absolute right to have regular counsel reinstated once he has agreed to proceed *pro se*. The defendant cannot be permitted to engage in the practice of hiring and firing appointed counsel."). In addition to the courts' interests, criminal defendants have an interest, *inter alia*, in receiving a fair trial.

We find these interests aptly balanced in a five factor test set forth by the California

---

5. In addition to providing standby counsel with a clear understanding of his or her role, our holding today will provide defendants with a more

definite appreciation of the risks they will assume in undertaking the monumental task of self-representation.

Court of Appeal in *Brookner*, 64 Cal.App.4th at 1394, 76 Cal.Rptr.2d at 71. The *Brookner* court stated:

> A request for restoration of the services of counsel is left to the sound discretion of the trial court, exercised in light of several factors, including: " '(1) defendant's prior history in the substitution of counsel and the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.' "

64 Cal.App.4th at 1394, 76 Cal.Rptr.2d at 71 (citations omitted). *See also United States v. Merchant*, 992 F.2d 1091, 1095 (10th Cir. 1993) ("In reviewing requests for the substitution of counsel, courts consider, *inter alia*, the degree to which a defendant has shown good cause and the timeliness of the request.... It is well within the discretion of the court to deny as untimely requests for counsel made after meaningful trial proceedings have begun." (citations omitted)).

■ Accordingly, we hold that when a *pro se* criminal defendant asks the circuit court to allow standby counsel to take over his or her trial defense, and the court has not previously ordered that standby counsel be prepared to take over in the manner requested by the defendant, then in deciding whether to grant the defendant's request the trial court should consider: (1) the defendant's prior history regarding the appointment of counsel, *e.g.*, the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.

■ Applying these factors to the instant case, we find the trial court did not abuse its discretion by denying Powers' request. Pow-

ers had a history of dissatisfaction with both Warnick and Hamilton, the two attorneys appointed to represent him, and his rejection of these two attorneys had already delayed his trial. Notwithstanding his dissatisfaction, however, Powers repeatedly asked that these lawyers be re-appointed to represent him in some capacity. Powers initially resisted Hamilton's appointment as standby counsel, and requested that the trial court appoint Warnick despite the fact that Powers had previously rejected her. Similarly, although Powers had convinced the Court to allow Hamilton to withdraw due to Powers' dissatisfaction with Hamilton's representation, he later asked that Hamilton be permitted to resume his representation. Based upon these facts, the circuit court clearly, and with good reason, believed that Powers was merely attempting to further delay the proceedings against him. Moreover, Powers gave no specific reason for his delayed request that Hamilton resume his defense, which was made on the second day of a three-day trial and after the State had rested its case. Finally, although Powers asserts that his standby counsel was familiar with the case and would have been able to take over his defense without interrupting his trial, this fact is not demonstrated in the record. The circuit court did not instruct Hamilton that he might be called upon to assume Powers' defense, and Hamilton was never asked whether he was prepared to take over. Consequently, we find no error in the circuit court's denial of Powers request for substitution of standby counsel.

## IV.

## CONCLUSION

For the reasons set forth in the body of this opinion, the convictions and sentences imposed by the Circuit Court of Harrison County are affirmed.

Affirmed.