**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4187**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

ANTONIO JERROD FULLER, a/k/a Tone,

             Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.   Raymond A. Jackson, District Judge.  (4:13-cr-00072-RAJ-DEM-1)

Argued:  September 23, 2016          Decided:  November 9, 2016

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**:  Lawrence  Hunter  Woodward,  Jr.,  SHUTTLEWORTH,  RULOFF, SWAIN,  HADDAD  &  MORECOCK,  P.C.,  Virginia  Beach,  Virginia,  for Appellant.   Richard  Daniel  Cooke,  OFFICE  OF  THE  UNITED  STATES ATTORNEY,  Richmond,  Virginia,  for  Appellee.  **ON  BRIEF**:  Dana  J. Boente,  United  States  Attorney,  Alexandria,  Virginia,  Howard  J. Zlotnick,  Assistant  United  States  Attorney,  OFFICE  OF  THE  UNITED STATES  ATTORNEY,  Newport  News,  Virginia,  for  Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Antonio Fuller of numerous offenses stemming from gang-related activity that included multiple homicides, robberies, and home invasions in the pursuit of drug-trafficking territory. In this direct appeal, Fuller challenges the district court's denial of his motions for continuance and whether his two court appointed trial attorneys were constitutionally ineffective. Finding no error, we affirm.

I.

As a member of the Thug Relations gang in Newport News, Virginia, Fuller and his associates engaged in acts of violence that included murder, threat of murder, attempted murder, malicious wounding, robbery, witness intimidation, and narcotics distribution.[1] On August 28, 2013, after an Eastern District of Virginia grand jury returned the initial indictment against Fuller and almost a full year before the trial was scheduled to begin, the district court appointed two attorneys to represent Fuller during the course of this prosecution.

---

[1] Because Fuller was convicted by a jury, the following facts are recited in the light most favorable to the Government. See United States v. Cabrera–Beltran, 660 F.3d 742, 746 (4th Cir. 2011).

2

On November 12, 2013, the grand jury returned a superseding indictment that charged Fuller with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); drug conspiracy, in violation of 21 U.S.C. § 846; three counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); two counts of attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); three counts of use of a firearm resulting in death, in violation of 18 U.S.C. § 924(c)(1), (j); two counts of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and three counts of using, brandishing, and discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). Fuller pleaded not guilty to the charges, and his case proceeded to trial.

On September 6, 2013, the district court entered a discovery order in which both parties agreed that the Government would provide Jencks Act[2] and Giglio[3] materials to defense counsel no later than five days before trial. The trial was scheduled to begin on July 1, 2014. At a pretrial hearing on June 26, 2014, Fuller's counsel made an oral motion to continue

---

[2] 18 U.S.C. § 3500. The Jencks Act requires the government to produce statements made by a government witness relating to the witness's trial testimony. Id. § 3500(b).

[3] Giglio v. United States, 405 U.S. 150 (1972) (requiring the government to disclose evidence tending to impeach a government witness prior to trial).

the trial date, arguing they did not have a complete criminal history for the Government's witnesses. The Government responded that it would produce the Jencks/Giglio materials after the hearing. The district court deferred its ruling on Fuller's motion to continue because the Government was not in violation of the joint discovery order as to timeliness. That same day, after the hearing, the Government produced 1,800 pages of Jencks/Giglio material.

On the eve of trial, June 30, 2014, Fuller's counsel filed a written motion to continue the trial date, arguing that the volume of materials made it difficult to adequately prepare for trial. The district court held a hearing that day, at which time the court denied Fuller's request for continuance and determined that the Government's voluminous disclosure made five days before trial had not violated the agreed joint discovery order.

The trial began as scheduled on July 1 and continued through July 16, 2014. The Government called forty-three witnesses, and the testimony at trial showed that, as a member of the Thug Relations gang, Fuller participated in the racketeering conspiracy.

At the conclusion of the Government's case, Fuller moved for judgment of acquittal as to all counts. The district court granted his motion as to Counts 3 through 8. The case was

submitted to the jury on the remaining counts: Count 1 (racketeering conspiracy), Count 2 (drug conspiracy), Count 9 (felon in possession of a firearm), Count 11 (murder in aid of racketeering), Count 12 (use of a firearm resulting in death), Count 13 (attempted murder in aid of racketeering), Count 14 (using, carrying, brandishing and discharging a firearm in relation to a crime of violence), and Count 15 (felon in possession of a firearm).

The jury returned a guilty verdict as to all remaining counts on July 16, 2014. Fuller moved for a judgment of acquittal and for a new trial under Federal Rules of Criminal Procedure 29 and 33. The district court denied both motions on September 4, 2014.

Several months after the trial ended, on September 15 and 24, the Government informed Fuller's counsel that it had located Brady[4] and Giglio material that had not been previously disclosed. Apparently seeking to negotiate how to proceed in light of the post-trial disclosures, the Government sent defense counsel a draft joint motion for new trial. However, as the parties failed to reach agreement, that motion was never filed

---

[4] Brady v. Maryland, 373 U.S. 83 (1963) (requiring the government to disclose "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment").

with the court. Instead, Fuller filed a motion to dismiss, arguing his convictions should be dismissed outright based on prosecutorial misconduct with regard to the late disclosures and retrial of the charges would be barred by the Double Jeopardy Clause. The government responded to Fuller's motion by again offering to agree to a new trial, but opposing dismissal.

After a hearing, the district court denied Fuller's post-trial motion to dismiss all charges. Fuller was sentenced on March 3, 2015 to two life sentences plus 360 months to run consecutively. Fuller timely appeals. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3231.


II.

On appeal, Fuller's contentions distill to two challenges. First, he asserts the district court erred by denying his pretrial motions for a continuance. This, Fuller insists, caused his counsel to go to trial unprepared such that his constitutional rights were violated. Second, Fuller contends his trial counsel were constitutionally ineffective by seeking only dismissal -- and rejecting the government's new trial offer -- upon the government's post-trial disclosure of Brady/Giglio material. We address these claims in turn.

6

A.

We first consider whether the district court erred in denying Fuller's pretrial motions for a continuance. Fuller contends that the district court's denial of his requests for continuance premised upon the government's disclosure of 1,800 pages of Jencks/Giglio material five days before trial forced his counsel to go to trial without adequate preparation.[5]

Our standard is a deferential one. In order to demonstrate an abridgment of a defendant's constitutional rights based on an alleged erroneous denial of a continuance, a defendant must show that the district court abused its discretion in denying the motion. Morris v. Slappy, 461 U.S. 1, 11-12 (1983). In the context of a denial of a motion for continuance, "abuse of

_____

[5] Fuller reframes his challenge to the district court's denial of the continuance motions as violations of due process, noting broadly his perception that every party involved in the trial failed to protect his constitutional rights. This overarching contention is subsumed by the remaining issues Fuller raises on appeal, to the extent it is not waived by Fuller's failure to develop more than a wholesale attack on the district court proceedings and actors. See United States v. LaRouche, 896 F.2d 815, 823 (4th Cir. 1990) ("The due process analysis, in this context, merges into the sixth amendment [right to counsel] analysis; if the district court's wrongful denial of a continuance did not prejudice the defense's ability to prepare, it cannot otherwise be said here that the court deprived the defendant[] of a fair trial."); see also Fed. R. App. P. 28(a)(8)(A) (stating that an appellant's brief "must contain: appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies").

discretion" means an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." Id.[6] "[E]ven if such an abuse is found, the defendant must show that the error specifically prejudiced [his] case in order to prevail." United States v. Hedgepeth, 418 F.3d 411, 419 (4th Cir. 2005); United States v. Lawrence, 161 F.3d 250, 254 (4th Cir. 1998) ("Furthermore, absent a presumption of prejudice, specific errors must be shown which undermine confidence in the outcome of the trial to constitute reversible error."). That is, in the absence of a presumption of prejudice, the defendant must point to particular errors of defense counsel that undermine confidence in the outcome of the trial. LaRouche, 896 F.2d at 823.

Against the foregoing standard, we examine the facts in this case. Nearly a year prior to trial, the district court appointed two attorneys to represent Fuller. On September 6, 2014, those attorneys and the Government agreed to a discovery order, which the district court entered, establishing the deadline for disclosure of "Jencks/Giglio material" would be "no later than five calendar days before trial." J.A. 34-35. The

---

[6] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

8

Government produced some Jencks/Giglio material well in advance of that deadline and its remaining pre-trial disclosures were made on June 26, 2014, still in compliance with the time requirements of the joint discovery order.[7]

Fuller insists that, despite the Government's compliance with the joint discovery order, the substantive complexity of the case and voluminous pre-trial disclosure warranted a continuance. "The difficulty for the defense in reading all the discovery material in five days, meeting with the client and discussing it and still preparing for trial and developing a trial strategy is obvious," he asserts. Appellant's Opening Br. 17-18. However, this Court has held that "the burdensome task of assembling a trial counsels against continuances, and, therefore, the trial courts must be granted broad discretion." LaRouche, 896 F.2d at 823. Rather than attempt the "seemingly impossible task in discounting the substantive complexity of a

---

[7] Notably, the Government provided the district court with reasons for seeking that timeframe for pretrial disclosure of the Jencks/Giglio materials: the security risk to witnesses. The prosecution of Fuller's related cases involved multiple homicides and spanned multiple gangs, some of which were at that time the target of ongoing investigations. See, e.g., United States v. Pridgen, No. 4:14-cr-59 (E.D. Va.) (involving six defendants from the same gang for additional murders who were indicted after the Fuller trial, on March 9, 2015). The Government represented certain earlier disclosures could pose a genuine risk to the personal safety of witnesses and foster witness tampering.

case by the number of days available for preparation," we emphasize "the process with which the judge conducted the trial." LaRouche, 896 F.2d at 824.

In this case, the district court addressed the concerns of Fuller's trial counsel, explaining it would give counsel "all the leeway [they] need[ed] during the course of th[e] trial[.]" J.A. 165. That leeway took the form of multiple accommodations, such as providing counsel "a lot of leeway" in cross examining witnesses, allowing counsel time to retrieve a file, granting a half-day recess to allow counsel to consult with Fuller, and ensuring that the Fuller was available at 8:15 a.m. each day to consult with trial counsel. J.A. 858. Moreover, the government provided advance notice of witnesses it intended to call the next day and reversed the order of its last two witnesses to accommodate defense counsel. In view of these accommodations, we simply cannot conclude that Fuller was denied the opportunity to explore fully before the jury the issues material to his defense. See United States v. Williams, 445 F.3d 724, 740 (4th Cir. 2006) (holding no abuse of discretion in the denial of a continuance where the trial record "confirm[ed] that the district court was correct in its assessment of the time needed to prepare").

Fuller points to nothing specific in the record that remotely suggests the district court was "unreasoning and

10

arbitrary" in denying the requests for continuance, as is required to find abuse of discretion in this circumstance. See Slappy, 461 U.S. at 11–12. Accordingly, Fuller's argument that the district court abused its discretion must fail.

We note further that even had Fuller made the requisite showing on the initial abuse of discretion element, his claim still would be unavailing because he has not demonstrated any specific prejudice. Fuller primarily contends, without elaboration, that "[p]erhaps the biggest evidence of prejudice is that the lack of time to prepare hampered the overall defense strategy[.]" Appellant's Opening Br. 19. This Court has explained, however, that "[m]ore than a general allegation of 'we were not prepared' is necessary to demonstrate prejudice." LaRouche, 896 F.2d at 825.

Fuller identifies only two instances of purported prejudice. He first asserts that his counsel could not locate "a page of a witness 302" and so was unable to take a "position on whether a statement [elicited by the Government] was a dying declaration." Appellant's Opening Br. 19. The district court found the statement offered by the Government inadmissible, and so Fuller fails to explain how this incident prejudiced him. Second, he challenges the district court's refusal to permit defense counsel time to "read through the documents as she thought that someone else had a different recollection or that

11

[the witness] had testified differently before." Appellant's Opening Br. 20. However, Fuller fails to explain what actually happened with this witness to cause any prejudice that would undermine our confidence in the outcome of the trial.

In sum, the mere suggestion that aspects of the defense could have been better, without more, does not suffice to demonstrate the requisite prejudice. See LaRouche, 896 F.2d at 825; United States v. Badwan, 624 F.2d 1228, 1231 (4th Cir. 1980) (observing that "post-hoc assertions by counsel that given more time something might have turned up" does not independently satisfy the prejudice element). For these reasons, we find the district court did not abuse its discretion in denying Fuller's motions for continuance.[8]

### B.

Fuller next contends he was denied effective assistance by both of his trial counsel. Specifically, he states that after the United States made post-trial disclosures of Brady/Giglio material, Fuller's counsel rejected the government's offer to agree to a new trial and sought only dismissal of the charges

---

[8] In support of his contentions, Fuller cites pages of the Joint Appendix in string cite fashion without elaboration. We therefore deem waived his "perfunctory and undeveloped claim[s]." See Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 396 n.* (4th Cir. 2014) (holding that assigning error without providing supporting argument is insufficient to raise issue on appeal).

12

outright. Fuller asks this Court to grant him a new trial, stating that had he been advised differently "he would have accepted a new trial or plea bargained his case with the government." Appellant's Opening Br. 31.

It is well-settled that

> a defendant may raise a claim of ineffective assistance of counsel in the first instance on direct appeal if and only if it conclusively appears from the record that counsel did not provide effective assistance. Otherwise, he must raise his claim in the district court by a collateral challenge pursuant to 28 U.S.C. § 2255.

United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014). Fuller fails to satisfy this "demanding" standard. Id.

It is unclear from the record whether Fuller was, in fact, dissatisfied with trial counsels' decision to seek dismissal instead of agreeing to a new trial. When the district court asked Fuller's counsel why he was rejecting the government's new trial offer, counsel responded:

> I have spoken with my client repeatedly about the possibility of moving forward with the new trial and, for reasons that I'm not really at liberty to disclose to the Court directly . . . we felt that, quite frankly, under the circumstances, a Motion to Dismiss or renewal of the Motion to Dismiss was more appropriate under the circumstances.

J.A. 2399-2400. There was no voir dire of Fuller in the district court during the post-verdict proceedings to determine his understanding or whether he had consented to the motion to dismiss.

13

As Fuller raises his ineffective assistance claim on direct appeal, without the benefit of an evidentiary record that might be accorded him on collateral review, we have no ability to assess Fuller's role in choosing the dismissal course over the government's new trial offer. See Massaro v. United States, 538 U.S. 500, 504-06 (2003) (observing that considering ineffective assistance claims on collateral review provides a more comprehensive record and results in fairer procedure). The record before us does not conclusively show that counsels' performance "fell below an objective standard of reasonableness," particularly given that we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland v. Washington, 466 U.S. 668, 688-89 (1984); see also Galloway, 749 F.3d at 241.

Fuller also has not shown that he was prejudiced by trial counsels' performance. A showing of prejudice requires "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Galloway, 749 F.3d at 241-42. Here, Fuller asserts in passing that "[i]t is simple to satisfy the prejudice prong under these circumstances." Appellant's Opening Br. 31. Yet, he provides no legal argument as to how the post-trial disclosures might

14

have been exculpatory in light of what appears to be overwhelming evidence supporting his conviction; whether the disclosure materials were admissible; and whether there was a reasonable probability that the late disclosures would have changed the result of the proceeding had they been disclosed in a timely fashion. These circumstances fail to satisfy the "demanding" standard for an ineffective assistance claim to succeed on direct appeal. See Galloway, 749 F.3d at 241-42.[9]

## III.

For the foregoing reasons, the district court's judgment is

AFFIRMED.

---

[9] Fuller also argues that the post-trial disclosures made by the government amount to a Brady violation such that a new trial is warranted. Below, however, Fuller repudiated the government's offer to agree to a new trial. Because Fuller had the opportunity below to obtain the precise remedy he seeks on appeal and expressly rejected it, this contention is waived. See United States v. Robinson, 744 F.3d 293, 298 (4th Cir. 2014) ("[W]hen a claim is waived, it is not reviewable on appeal[.]").

15